IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AUTO-OWNERS INSURANCE COMPANY,
a foreign corporation,

      Plaintiff,

vs.

AMERICAN BUILDING MATERIALS,
INC., a Florida corporation, KB HOME
TAMPA, LLC, a foreign corporation, and
KB HOME, INC., a foreign corporation,

      Defendants.

_____/

CASE NO.: 8: 10-cv-313-T24-AEP

**Dispositive Motion for Summary
Judgment**

## DEFENDANT KB HOME'S MOTION FOR SUMMARY JUDGMENT AS TO NAMED INSURED COVERAGE AND MEMORANDUM OF LAW

      Defendants, KB Home Tampa, LLC and KB Home, Inc. (collectively, "KB Home"), pursuant to Fed.R.Civ.P. 56 and Rule 3.01, M. D. Fla. Rules, move this Court for entry of final summary declaratory judgment against Auto-Owner's Insurance Company ("AOI"), declaring that AOI has both a duty to defend and a duty to indemnify its named insured, defendant, American Building Materials, Inc. ("ABM") in the underlying action[1].  In support of this motion, KB Home shows that there are no genuine disputed issues of material fact and that summary judgment should be rendered against AOI as a matter of law.  In support hereof, KB Home submits the accompanying Memorandum of Law.

## MEMORANDUM OF LAW

_____

[1]      KB Home, as an Additional Insured under the Policy, has filed a counterclaim against AOI.  This Motion for Summary Judgment addresses exclusively ABM's coverage under the Policy as the primary named insured.

I.    **SUMMARY AND OVERVIEW**

AOI is the insurer of ABM under a Commercial General Liability insurance policy.  This action arises out of the property damage suffered by homeowners who purchased homes from KB Home due to the installation of imported Chinese drywall ("CDW") in the subject homes. As has been well documented[2], during the housing boom in the mid 2000's drywall was imported from China to meet the need.   Sometime after the installation of such CDW, homeowners began to complain of emissions or smelly gasses, the corrosion and blackening of metal wiring, surfaces and objects, and the failure of HVAC units and appliances.  Such property damage has been conclusively attributed to CDW.   The scope of the problem is massive. Multidistrict litigation pursuant to 28 U.S.C. § 1407 is ongoing in MDL 2047, pending in the Eastern District of Louisiana, Judge E. Fallon, presiding (the "MDL").

ABM is a local Tampa, Florida supplier of drywall and other building materials. Pursuant to a subcontract, ABM supplied KB Home with CDW that was installed in numerous homes in Hillsborough County, Florida (the "Affected Homes[3].")  KB Home immediately began addressing the complaints of its customers and performing repairs to the Affected Homes. Additionally, numerous lawsuits were initiated against KB Home and others, including multiple omnibus class actions in the MDL.  It is now generally accepted that in order to adequately and cost effectively repair a home with CDW, the home must be stripped to the studs and all wiring, insulation, wood trim, electrical components, appliances and other components removed and

---

[2]      See, opinions in "bellwether" trials conducted by Judge Fallon in the MDL -  *Germano, et al. v. Taishan Gypsum Co. Ltd., et al.,* Case No. 09-6687, Findings of Fact and Conclusions of Law (E.D. La. April 8, 2010); *Hernandez v. Knauf Gips KG, et al.,* Case No. 6050 Findings of Fact and Conclusions of Law (E.D. La. April 27, 2010).

[3]      Affected Homes continue to be documented by KB Home.  However, the current number of KB Home Affected Homes with confirmed CDW supplied by ABM is 53 homes.  The Affidavit of Tom Schramski, Project Manager, Central Florida of KB Home is separately filed in support of this motion. *See, Affidavit of Schramski,* ¶ 9.

replaced.  The home must then be HEPA vacuumed.  Affected Home owners must be relocated during repairs.  This protocol, adjudicated by Judge Fallon in the MDL, is being followed by KB Home in its ongoing repairs of the Affected Homes.  *Affidavit of Schramski,* ¶5.

KB Home sued ABM in Florida state court in Hillsborough County seeking to recover damages suffered by KB Home arising out of the CDW supplied by ABM (the "Underlying Action").  AOI is currently providing a defense to ABM in the Underlying Action under a reservation of rights.

AOI brought the instant case against KB Home and ABM seeking a declaration that there is no coverage under the Policy and that AOI has no obligation to defend or indemnify ABM in connection with the Underlying Action.  As the injured party in the Underlying Action, KB Home has standing to litigate the coverage issues.  Under the undisputed facts of this case, ABM's claim is within the Policy insuring agreement and none of the policy provisions relied upon by AOI apply to defeat coverage.  AOI has both a duty to defend and a duty to indemnify ABM for the damages asserted by KB Home in the Underlying Action as a matter of law.

## II.    THE UNDISPUTED FACTS

The following facts and other matters are without any genuine, material dispute.

- AOI issued a Commercial General Liability Policy to ABM, policy number 20669817-06, for policy period 6/15/2006 through 6/15/2007 (the "Policy").  The Policy is attached to both AOI's Complaint and its Amended Complaint as Exhibit "A." (DE 1, 8, Ex. "A")

- KB Home is suing ABM in the Underlying Action currently pending in the Thirteenth Judicial Circuit, Hillsborough County, Florida styled, *KB Home Tampa, LLC v. American Building Materials, Inc.*, Case No. 10-CA-01432.  (*Affidavit of Schramski*, Ex. "1," hereinafter the "Underlying Complaint")

- The Underlying Complaint alleges that CDW supplied by ABM pursuant to a subcontract with KB Home was installed in Affected Homes, causing substantial property damage to Affected Homes and to other property.  (*Underlying Complaint*, ¶ 12)

- The subcontract between KB Home and ABM is attached to the Underlying Complaint as Exhibit "A" and referred to herein as the "ABM Subcontract."  In paragraph 12 of the ABM Subcontract, ABM assumes the tort liability of KB Home to pay for property damage to third parties.  (*ABM Subcontract,* ¶12)

- On or about July 30, 2009, KB Home sent a "Notice of Claim" to ABM and AOI advising that CDW supplied by ABM was the cause of property damage within the Affected Homes. (*Amended Complaint*, ¶ 9, DE 8)  KB Home demanded indemnity for damages arising from the CDW.  (*Amended Complaint*, ¶ 10, DE 8)

- On or about January 28, 2010, AOI filed its Complaint for declaratory action against ABM and KB Home (DE 1).  On or about May 27, 2010, AOI filed an Amended Complaint for Declaratory Action (DE 8).[4]

- In its Amended Complaint, AOI alleges that there is no coverage under the Policy for property damage to homes arising from CDW supplied by ABM because of exclusions 2.a., 2.b., 2.f., 2.k., 2.m., and 2.n. in the Policy. (*Amended Complaint*, ¶¶ 18, 22, DE 8)

---

[4]  A pleading anomaly exists in this case to the extent that KB Home answered the initial Complaint (DE 14) and AOI answered KB Home's Counterclaim filed in response to the initial Complaint. (DE 19)  The Amended Complaint was never served on KB Home, and does not name KB Home as a party.  (DE 8)  AOI cannot unilaterally dismiss the case as to KB Home without consent or leave of court.  *Fed. R. Civ. P* .41(a)(1), 21 and 15(a) (2010).  Moreover, in the context of insurance coverage cases, the insurer is not at liberty to simply drop or dismiss a named injured party. *Monticello Ins. Co. v. Dynabilt Mfgr.Co.*, 2005 WL 3019241 (M.D. Fla. 2005).  In any event, the pleading anomaly is not relevant for purposes of this Motion.  Both AOI's Complaint and its Amended Complaint constitute judicial admissions binding on AOI for purposes of this Motion and are relied upon herein for such purposes only.  *Cooper v. Meridian Yachts, Ltd.*, 575 F. 3d 1151, 1177-1178 (11th Cir. 2009); *Best Canvas Products & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F. 2d 618, 621 (11th Cir. 1983).

4

- Neither ABM nor KB Home expected or intended property damage to result from the drywall installed in the Affected Homes. *Affidavit of Schramski*, ¶ 3.

- The "operations" of ABM, as a supplier, are completed and no longer "ongoing" when the drywall product is delivered. *Affidavit of Schramski*, ¶ 4.

- Property damage to Affected Homes occurred within the Policy period. *Affidavit of Schramski*, ¶ 9.

### III.  ARGUMENT

#### A.  KB Home, as the Injured Party, has Standing to Fully Litigate the Coverage Issues Presented in this Case.

In the context of an insurance coverage action, an "actual controversy" exists between and injured party and the insurer for the alleged tortfeasor sufficient to support the requirements of the Federal Declaratory Judgment Act. *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 61 S. Ct. 510, 512-513 (1941). An injured party, such as KB Home, who has been named in a coverage lawsuit between and insurer and its named insured, has standing to litigate the named insured's coverage issues. *Id. See, Dairyland Insurance Co. v.* Makover, 654 F. 2d 1120, 1123 (5th Cir. 1981)(injured party as potential judgment creditor has standing to adverse coverage decision); *Monticello Insurance Co. v. Dynabilt Manufacturing Company, Inc.*, 2005 WL 3019241 (M.D. Fla. 2005)(dismissal of coverage action after default judgment against named insured would prejudice injured party who has standing in its own right to litigate coverage issues); *Mid-Continent Casualty Company v. Frank Casserino Construction, Inc.*, 2010 WL 2431900 (M.D. Fla. 2010) (same).

Other federal Circuits recognize the injured party's standing in this context. *See, e.g., Federal Kemper Ins. Co. v. Rauscher*, 807 F. 2d 345, 354 (3rd Cir. 1986) ("The injured party has an independent and not derivative right to be heard…."); *Hawkeye-Security Ins. Co. v. Schulte*,

5

302 F. 2d 174, 177 (7th Cir. 1962) (injured party is not a nominal party, but party with standing to appeal adverse coverage decision). Florida law also recognizes the right of the injured party to contest an insurer's coverage action against a named insured. *Tomlinson v. State Farm Fire and Cas. Co.*, 579 So. 2d 211, 212 (Fla. 2nd DCA 1991) (Florida Statutes operate only to bar lawsuits by injured parties *against* insurers, not the defense of coverage actions brought by insurers); *Monticello Insurance Co. v. Dynabilt Manufacturing Company, Inc.*, 2005 WL 3019241 (M.D. Fla. 2005) (Florida recognizes standing of injured party to defend in insurer's coverage action).

Therefore, KB Home has standing to be heard, in its own right and not derivatively, in opposition to AOI's complaint that AOI has no duty to defend or to indemnify ABM under the Policy for damages asserted in the Underlying Action.

## B. The Summary Judgment Standard.

Summary judgment should be entered if the pleadings, discovery, affidavits and disclosure materials on file show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Fed.R.Civ.P.* 56(c)(2) (2011). The moving party bears the initial burden of "pointing out" to the Court that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986). The movant may discharge its burden with or without supporting evidence or affidavits. *Id* .at 325. Once the movant discharges this burden, the nonmoving party must "go beyond the pleadings" and by affidavit or other evidence in the record designate specific facts showing there is a genuine issue for trial. The non-moving party must raise significant probative evidence sufficient for a jury to find in its favor. *LaChance v. Duffy's Draft House, Inc.* 146 F. 3d 832, 835 (11th Cir. 1998). "Where the record taken as a whole could not lead a rational trier of fact to

find for the non-moving party" summary judgment for the moving party is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986).

In determining whether the moving party has met its burden, the court draws "reasonable" inferences from the evidence in favor of the non-moving party. *Brown v. City of Clewiston*, 848 F. 2d 1535, 1540 n. 12 (11th Cir. 1988). The non-movant "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986).

### C. Certain Principles of Insurance Law are Applicable to this Motion.

#### 1. General rules of insurance policy construction favor coverage for the insured.

The construction of an insurance policy is a question of law. *Jones v. Utica Mutual Ins. Co.*, 463 So. 2d 1153, 1157 (Fla. 1985). An insurance policy should be construed to provide the broadest possible coverage for the insured. *Demshar v. AAACon Auto Transp., Inc.*, 337 So. 2d 963, 965 (Fla. 1976); *Northbrook Prop. & Cas. Ins. Co. v. R&J Crane Service, Inc.*, 765 So. 2d 836, 840 (Fla. 4th DCA 2000). The insurer has the burden of proving the applicability of any exclusion to coverage under a policy. *U.S. Concrete Pipe Co. v. Bould,* 437 So. 2d 1061, 1065 (Fla. 1983); *Herrera v. C.A.Suguros Catatumbo,* 844 So. 2d 664, 668 (Fla. 3d DCA 2003).

When an insurer relies upon an exclusion to deny defense coverage, it has the burden of demonstrating that the allegations of the underlying complaint are solely and entirely within the policy exclusion. *Castillo v. State Farm Fla. Ins. Co.*, 971 So. 2d 820, 824 (Fla. 3rd DCA 2007); *Northland Casualty Co. v. HBE* Corporation, 160 F. Supp 2d 1348, 1359 (M.D. Fla. 2001); IDC *Construction, LLC v. Admiral Insurance Co.*, 339 F. Supp. 2d 2d 1342, 1348 (S.D. Fla. 2004).

Exclusionary clauses are disfavored and are always strictly construed in favor of coverage. *Westmoreland v. Lumbermens Mut. Cas. Co.,* 704 So. 2d 176, 179 (Fla. 4th DCA 1997).

> **2.       The duty to defend *and* the duty to indemnify, under proper circumstances, may be adjudicated in a separate coverage action prior to final resolution of the underlying case.**

The duty to indemnify is separate and distinct from the duty to defend. The duty to defend, which is broader than the duty to indemnify, is determined solely by the allegations in the complaint brought against the insured, which must set forth facts that bring the case within the coverage of the policy. *Nat'l Union Fire Ins. Co. v. Lenox Liquors, Inc.*, 358 So. 2d 533, 536 (Fla. 1977); *Biltmore Constr. Co. v. Owners Ins. Co.*, 842 So. 2d 947, 949 (Fla. 2nd DCA 2003); *Farrer v. U.S. Fid. & Guar. Co.*, 809 So. 2d 85, 88 (Fla. 4th DCA 2002); *Grissom v. Commercial Union Ins. Co.*, 610 So. 2d 1299, 1306-1307 (Fla. 1st DCA 1992). Applying this so-called "eight corners rule," the court evaluates whether the allegations of the complaint filed against the insured implicate potential coverage under the plain language of the policy. *Colony Ins. Co. v. Barnes*, 410 F. Supp. 2d 1137, 1139 (N.D. Fla. 2005). "If the complaint alleges facts partially within and partially outside the coverage of the policy, the insurer is obligated to defend the entire suit." *Grissom*, 610 So. 2d at 1307.

In 2005, the Florida Supreme Court clarified that declaratory judgment actions may be used to determine both the insurer's duty to defend and its duty to indemnify, even in cases in which it is necessary to resolve issues of fact in order to make such coverage determinations. *Higgins v. State Farm Fire and Casualty Co.*, 894 So. 2d 5, 15 (Fla. 2005). Rejecting prior cases, the Court stated, "Why should an insured be placed in a position of having to have a substantial judgment against the insured without knowing whether there is coverage from a policy?" *Id.*

The Court ruled that the coverage case trial court had discretion to determine whether to decide all coverage issues before it, or alternatively, to defer the indemnity issue until the underlying case was concluded.  *Id.* at 15-16.  The Court indicated that certain factors should be considered by the coverage trial court, including: (1) whether theories of recovery in the underlying tort action are mutually exclusive; (2) whether proceeding to decision on the indemnity issue will promote settlement and avoid potential collusive action in the underlying case to create coverage; and, (3) whether the insured has resources independent of insurance, such that it would be immaterial to the injured party whether or not there was coverage.  *Id.* at 16-19; *Progressive Express Insurance Company v. Reed*, 971 So. 2d 176, 177-178.  The Court concluded that there was "too infinite a variety of circumstances" to define a rule governing when the indemnity issue should be determined prior to a judgment in the underlying case, and when the underlying case should proceed first.  *Id.* at 17.  However, the Court did specifically recognize that factors may well weigh in favor of adjudicating the indemnity issue before the underlying case has been resolved. *Id.*

> 3.   **Both AOI's duty to defend ABM and AOI's duty to indemnify ABM in regard to damages that may be awarded in the Underlying Action should be resolved in this case.**

Application of the *Higgins* factors strongly favors adjudicating both AOI's defense and indemnity obligations in this case.  First, theories of recovery in the Underlying Action are "mutually exclusive":

> But in this case there are not some claims that are covered and some that are not; the asserted claims are mutually exclusive.  Either the claim is covered or it is not. Therefore, the insurer must provide defense until the coverage issue is resolve.  In a case such as this – alternative, mutually exclusive theories – the indemnity issue and the duty to defend issue are inextricable.  The resolution of one necessarily resolves the other.  An early resolution of this issue is essential.

*Allstate Insurance Co. v. Conde*, 595 So. 2d 1005, 1004 (Fla. 5th DCA 1992). See*, Higgins*, 894 So. 2d at 16 (*quoting Conde*).  As in *Higgins* and *Conde*, the Underlying Action asserts alternate theories for recovering the same damages.  *Underlying Complaint.*  Therefore, the first *Higgins* factor weighs strongly in favor of resolving the indemnity issue in this coverage action.

Additionally, under the second factor, resolving all coverage issues in this case will promote settlement of the entire dispute.  There is no genuine dispute that ABM supplied to KB Home the CDW that caused damage to the Affected Homes.  Resolving the coverage issues now will facilitate settlement of the Underlying Action.  Delaying ruling on the duty to indemnify issue will only delay resolution of the overall dispute.

The third *Higgins* factor, whether the insured has substantial resources outside of insurance to satisfy claims in the underlying action, weighs in favor of proceeding immediately with the coverage determination.  ABM is a local Tampa supplier of drywall and other building supplies which has been financially impacted by widespread CDW litigation and by the recent economic downturn.  ABM lacks resources to settle the dispute with KB Home and AOI cannot factually dispute such conclusion.  The third factor suggests no reason to delay.

Finally, although not discussed in *Higgins*, the fact that coverage under the Policy is clear and summary judgment indicated is a factor that should weigh in favor of resolving all coverage issues without delay.  "[I]t is illogical and unfair to not allow insureds and insurers to have a determination as to whether coverage exists on the basis of facts underlying a claim against an insurance policy."  *Higgins*, 894 So. 2d at 15.  All coverage issues should be resolved now, without delay.

**D.    ABM's Claim is within the Insuring Agreement under the Policy as a Matter of Law.**

ABM's claim is within the Policy "Insuring Agreement" and there is no genuine disputed issue of material fact regarding this conclusion.   The Insuring Agreement, in pertinent part, provides as follows:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We have the right and duty to defend any "suit" seeking those damages.

*Policy*, I.A.1.a.   "Property damage" under the Policy means "physical injury to tangible property" or "loss of use of tangible property that is not physically injured." *Policy*, V.12.  The Underlying Action is "suit" for "property damage" against ABM as a matter of law.  *Underlying Complaint ¶ 12; Policy,* I.A.1.a.  *See*, *United States Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 889 (Fla. 2007) ("[A] claim for the costs of repairing damage caused by defective work … is a claim for 'property damage' under a post-1986 CGL policy).

Further, it is undisputed that there was in fact an "occurrence" of "property damage" within the "coverage territory" and during the Policy period. *Affidavit of Schramski*, ¶¶ 5-10.  "It is the act that causes the damage, which is neither expected nor intended from the standpoint of the insured, that constitutes the "occurrence." *Koikos v. Travelers Ins. Co.*, 849 So. 2d 263, 271 (Fla. 2003).  "Occurrence" also includes continuous or repeated exposure to substantially the same harmful conditions." *Policy,* V, 9.  Considering that property damage caused to Affected Homes by CDW is a gradual, continuous process, there is no genuine dispute that "property damage" occurred within the Policy period.  *See, Affidavit of Schramski, ¶¶* 6, 10.

Finally, there is no dispute that the Affected Homes are located in Hillsborough County, Florida. *Affidavit of Schramski, ¶* 8.  "Coverage territory" under the Policy includes the entire United States, Puerto Rico and Canada.  *Policy*, V, 4. a.  Hillsborough County is indisputably

within the "coverage territory." *Policy,* V, 4.  Accordingly, there is no genuine disputed issue of material fact and ABM's claim is within the insuring agreement of the Policy as a matter of law.

### E.      None of the Policy Exclusions Relied on by AOI are Applicable to ABM's Claim as a Matter of Law.

In its Amended Complaint, AOI alleges that there is no coverage under the Policy for "property damage" to homes arising from CDW supplied by ABM due to exclusions 2.a., 2.b., 2.f., 2.k., 2.m., and 2.n in the Policy. (Amended Complaint, ¶¶ 18, 22, DE 8).  The relied upon exclusions are not applicable to ABM's claim.  Therefore, because the undisputed record shows that ABM's claim is within the insuring agreement and that none of the relied upon Policy exclusions apply, KB Home and ABM are entitled to a summary judgment declaring that AOI has both a duty to defend ABM in the Underlying Action and a duty to indemnify ABM for damages ultimately awarded KB Home in the Underlying Action, as a matter of law.

### 1.      Exclusion 2.a. is Inapplicable.

Policy exclusion 2.a., by its own terms, excludes from coverage only "'[b]odily injury' or 'property damage' expected or intended from the standpoint of the insured." *Policy*, I.2.a.  In order for exclusion 2.a. to apply, the insured must commit an intentional injury. *Delta Pine & Seed Co. v. Nationwide Agribusiness,* 530 F. 2d 395 (5th Cir. 2008).  The Underlying Action does not allege intent on the part of ABM to cause the property damage.  There is no record evidence that ABM "expected or intended" property damage to the Affected Homes as a result of the drywall it supplied to KB Home.  *Affidavit of* Schramski, ¶ 3. Since there is no genuine factual dispute that the property damage resulting from CDW in this case is an accident, neither intended nor expected, exclusion 2.a. is inapplicable as a matter of law.

## 2.      Exclusion 2.b. is Inapplicable.

Exclusion 2.b. excludes coverage for liability assumed in a contract.   However, the

exclusion does not apply to liability assumed in an "insured contract" as follows:

> This exclusion does **not apply** to liability for damages: (1) Assumed in a contract or agreement that is an "insured contract" provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or (2) That the insured would have in the absence of the contract or agreement.

*Policy,* 2.b.(1) and (2).

Section V.6.f. includes in its definition of "insured contract" the following:

> That part of any other contract or agreement pertaining to your business…under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization.   Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

*Policy*, V.6.f.   It is indisputable that KB Home sues ABM in the Underlying Action for

contractual indemnification under paragraph 15 of the ABM Subcontract, in which ABM

assumes the tort liability of KB Home to pay for property damage to third parties, such as the

owners of Affected Homes in the Underlying Action.  *Underlying Complaint, ¶* 34.

In paragraph 15 of the ABM Subcontract, ABM specifically indemnifies KB Home for,

among other things, "personal injury" [¶15(a)(i)] and "defects in or damage to property of any

kind" [¶15(a)(ii)] arising out of ABM's "activities conducted in, at, about, or on the Project"

including "negligent or willful acts, errors or omissions" [¶15(a)(viii)].  *ABM Subcontract, ¶* 15.

Therefore, it is undisputed that the ABM Subcontract is an "insured contract" under the Policy

and falls within the exception to the exclusion.  *See, e.g., Florida Municipal Power Agency v.*

*Ohio Casualty Ins. Co.*, 714 So. 2d 660, 661-662(indemnification agreement was "insured

contract" under policy); *St. Paul Fire and Marine Ins. V. Lexington Ins. Co.*, 2006 WL 1295408

(S.D. Fla. 2006)(indemnity provision in lease was "insured contract"); *Cowan Systems, Inc. v. Harleysville Mut. Ins. Co.*, 547 F. 2d 368, 374-376 (4th Cir. 2006)(trucking company's indemnity agreement with retailer was "insured contract"); *Day v. Toman*, 266 F. 3d 831, 835-836 (8th Cir. 2001)(general contractor's indemnity agreement with owner was "insured contract" under CGL policy and exclusion 2.b. inapplicable).  There is no genuine disputed issue of fact.  Exclusion 2.b. does not preclude coverage due to "insured contract" exception as a matter of law.

### 3.  Exclusion 2.f. is Inapplicable.

AOI relies upon the 2.f. "pollution exclusion," specifically urging application of I.2.f.1.d.i. of the Policy which provides:

> f. (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:
>
> (d)   At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf *are performing operations:*
>
> (i)   if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor.

*Policy,* 2.f.1.d.i. (emphasis added).

While the question whether property damage relating to CDW constitutes property damage arising out of a "pollutant" is hotly disputed in numerous cases throughout the country, that question need never be reached in concluding that exclusion 2.f. does not apply in this case.  For the exclusion to apply, the alleged "pollutants" at issue in the Underlying Action must be "[a]t or from any site or location on which you or any contractors or subcontractors working directly or indirectly on any insured's behalf *are performing operations…." Policy,* I.2.f.1.d.i. (emphasis added).

Notably, the phrase "are performing operations" is repeated in the Policy at exclusion j.5. *Policy,* 2.j.5. "[T]he vast majority of commentators that have addressed exclusion j.5. have recognized that the phrase 'are performing operations' is intended to 'bar coverage for the work being done by a contractor when claims arise at the time the work is being performed.'" *Advantage Homebuilding, LLC v. Maryland Casualty Co.*, 470 F.3rd 1003, 1010-1011 (10th Cir. 2006) *quoting American States Ins. Co. v. Powers,* 262 F. Supp.2d 1245, 1250 (D. Kan. 2003)(citations omitted). *See also, Oak Ford Owners Association v. Auto-Owners Insurance Company*, 510 F. Supp 2d 812, 818 (M.D. Fla. 2007) (exclusion 2.j.5. applies to property damage arising during the performance of operations). There can be no genuine factual dispute that the "operations" of ABM, as a material supplier, are complete at the time the materials are delivered. *See, Affidavit of Schramski, ¶ 4.* Thus, property damage arising from completed installation of the drywall is not excluded under 2.f. of the Policy as a matter of law.

Recently, in *Scottsdale Insurance Company v. American Safety Indemnity Co.*, Judge William H. Steele, Chief District Court Judge, Southern District of Alabama, applied this very same interpretation to the identical exclusion in the context of a CDW case. *See, Order Denying Motion for Summary Judgment*, Case No. 10-0445-WS-N, November 23, 2010. The Court characterized the phrase "are performing operations" as "unequivocally present tense." *Id.* at 10. Noting that CDW damages relate to alleged discharges from CDW which occur after operations are completed, the Court declined to apply the policy exclusion f.1.d.1. – the identical provision relied upon by AOI in this case. *Id.* The holding by Judge Steele applies with equal force to the instant Policy: "the plain language of the Pollution Exclusion limits its reach to pollutant releases at locations where the insured contemporaneously performs operations, rather than pollutant releases at locations where the insured performed operations … earlier." *Id.* at 12. To the

15

extent "property damage" was caused by "pollutants" in this case, there is no dispute that such damages occurred after ABM completed it operations.  Accordingly, based upon the undisputed record in light of the language of the Policy as interpreted by the case law, exclusion 2.f. does not apply to ABM's claim as a matter of law.

### 4.       Exclusion 2.k. is Inapplicable.

Exclusion 2.k. excludes from coverage "'[p]roperty damage' to 'your product' arising out of it or any part of it." *Policy,* I.2.k.  However, real property is excluded from the definition of "Your product" under the Policy.  *Policy*, V.14.a.  The "property damage" in this case was not incurred until after the ABM drywall was installed in the Affected Homes.  *Affidavit of Schramski*, ¶ 7.  Under Florida law, improvements to real property are included in the definition of real property. *See, e.g., Fla. Stat.* § 192.001(12) (2010) ("'Real Property' means land, buildings, fixtures and all other improvements to land."); *Fla. Stat.* § 558.002(8) (2010) ("'Real Property' means land that is improved and the improvements on such land including fixtures ...."); *Fla. Stat.* § 420.503(34) (2010) ("'Real Property' means all lands, including improvements and fixtures thereon...."). *See also, Black's Law Dictionary,* 1234 (7th ed. 1999)("real property" defined as "[L]and and anything growing on, attached to, or erected on it....")  Therefore, because the ABM drywall once installed became "real property," it is not within the definition of "Your product" and exclusion 2.k. is therefore inapplicable as a matter of law.

In addition, Judge Fallon in the MDL has thoroughly addressed the scope of property damage and the scope of necessary repairs to houses constructed with CDW.  *Findings and Conclusions of Law*, April 8, 2010, pp. 26-60, MDL 2047, Fallon, J. presiding; *Findings of Fact and Conclusions of Law*, April 27, 2010, pp 20-38, MDL 2047, Fallon, J. presiding.  It is now generally accepted that CDW causes widespread damage to virtually all components of the

construction, and that, in order to properly repair a CDW residence, the structure must be stripped down to bare floor and studs, with all insulation, wiring, drywall, HVAC units, copper plumbing, molding, baseboards, and bathroom fixtures removed and replaced, and the home cleaned with a HEPA vacuum. *Id.* AOI cannot materially dispute this proposition.

Clearly, "property damage" to property other than ABM's product has occurred. On the other hand, AOI cannot present any material fact from which a jury might conclude that there has been "property damage" to ABM's product itself – the CDW. Rather, it is the CDW causing damage to other components of the Affected Homes, not damage to itself. The CDW is defective because it causes damage to other property, not because it is itself "damaged." There is no material factual dispute in this regard. Judge Fallon has determined in the MDL that all wiring in CDW affected homes must be removed and that replacement of the electrical wires requires access to the wall cavities that are covered by drywall. *Findings and Conclusions of Law*, April 8, 2010, pp. 38-39, MDL 2047, Fallon, J. presiding. ABM's "product" must be removed in order to repair damage to other property in the Affected Homes. Exclusion 2.k. is thus inapplicable to any "property damage" in the Underlying Case. Certainly, exclusion 2.k. does not supply a basis to deny ABM a defense or indemnity as a matter of law.

### 5.    Exclusion 2.m. is Inapplicable.

Additionally, AOI relies upon exclusion 2.m. which provides, in pertinent part, as follows:

> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
> (1) a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
> (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

> This exclusion does **not apply to the loss of use of other property** arising out of sudden and accidental physical injury to "your product" or "your work" **after it has been put to its intended use.**

*Policy*, I.2.m. (emphasis added)

Further, under the Policy,

> "impaired property" means tangible property other than "your product" or "your work", that cannot be used or is less useful because:
>
> a.  it incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate, or dangerous; or
> b.  You have failed to fulfill the terms of a contract or agreement;
>
> If such property can be restored to use by:
>
> a.  The repair, replacement, adjustment or removal of "your product" or "your work"; or
> b.  Your fulfilling the terms of the contract or agreement.

*Policy*, V.5.

On its face, exclusion 2.m. does not apply for a variety of reasons. Exclusion 2.m. excludes "property damage" to "impaired property" - defined as "tangible property that cannot be used or is less useful because … it incorporates 'your product'" but only on the condition that such tangible property "can be restored to use by repairing, replacing or removing "your product." *Policy,* I.2.m., V.5. Neither the ABM supplied CDW nor the components of the Affected Homes damaged by that CDW can be "restored to use" by replacing the ABM supplied CDW. AOI cannot credibly dispute that the property damage to the Affected Homes is permanent and that repairs require removal of all elements of the construction down to the studs. *See, Findings and Conclusions of Law,* April 8, 2010, pp. 26-60, MDL 2047, Fallon, J. presiding*; Findings of Fact and Conclusions of Law,* April 27, 2010, pp 20-38, MDL 2047, Fallon, J. presiding. Therefore, there is simply no "impaired property" for which recovery of damages is sought in the Underlying Action, as matter of law.

Moreover, the specific Policy exception to exclusion 2.m. provides that the exclusion "does not apply" if the loss of use of other property arising from "your product" occurs after the product was "put to its intended use."  AOI cannot genuinely dispute that the property damage to other property damaged as a result of the ABM supplied CDW occurred after ABM's product was put "to its intended use," i.e., installed in the Affected Homes.  *Affidavit of Schramski*, ¶ 7. Exclusion 2.m. does not preclude coverage as a matter of law.

### 6.    Exclusion 2.n. is Inapplicable.

Finally, AOI's reliance on the so-called "sistership exclusion" found at I.2.n of the Policy is clearly misplaced.  The name of the exclusion derives from a governmental recall of an entire class of airplanes as a precautionary measure, even though only one of the specific models - a "sister" to others in the class – actually exhibited confirmed defects.  *See, Harris Specialty Chemicals, Inc. v. United States Fire Insurance Company,* 2000 WL 34533982, n.8 (M.D. Fla. 2000)(explaining source of name "sistership exclusion").  The purpose of the exclusion is "to limit the insurer's exposure in cases where, because of the actual failure of the insured's product, similar products are withdrawn from use *to prevent the failure of these other products, which have not yet failed*, but are suspected of containing the same defect."  *Honeycomb Systems, Inc. v. Admiral Insurance Co.,* 567 F. Supp. 1400, 1406 (D. Me. 1983)(emphasis added).  *See, Harris Specialty Chemicals, Inc.* at n. 8 (because no assertion that product was recalled, prompting repairs on units not exhibiting damage, exclusion did not apply).

In this case, AOI cannot show that there has been any "recall" of CDW.  Even if it could do so, exclusion 2.n. excludes from liability under the Policy costs associated with "sister" products that have not actually failed.  *See, U.S. Fidelity & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E. 2d 926, 934 (Ill. 1991)(asbestos removal not excluded by sistership exclusion because

the asbestos has already failed).  Plainly, this is not the situation here.  This is not a product recall

case.  AOI cannot present any facts from which a jury could conclude that exclusion 2.n. applies.

Exclusion 2.n. does not preclude coverage as a matter of law.

IV.  **CONCLUSION**

For all of the foregoing reasons, KB Home is entitled to a summary declaratory judgment

ordering that AOI has a duty under the Policy to defend ABM in the Underlying Case and that

AOI has a duty under the Policy to indemnify ABM for damages for "property damage" awarded

to KB Home and against ABM in the Underlying Action.

Respectfully submitted,

BARNETT, BOLT, KIRKWOOD
LONG & MCBRIDE

s/Charles A. Carlson
Charles A. Carlson, Esq.
Florida Bar # 716286
Amy E. Stoll, Esq.
Florida Bar #150959
601 Bayshore Boulevard, Suite 700
Tampa, Florida  33606
(813) 253-2020
(813) 251-6711-Facsimile

and

NEWMEYER & DILLION, LLP
Gregory L. Dillion, Esq.
Alan H. Packer, Esq.
Bonnie T. Roadarmel, Esq.
895 Dove Street, 5th Floor
Newport Beach, CA 92660
(949) 854-7000/(949) 854-7099 Facsimile


Co-Counsel for KB HOME TAMPA, LLC
and KB HOME, INC.

20

## Certificate of Service

I hereby certify that on this 15th day of April, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

s/Charles A. Carlson