## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

AUTO-OWNERS INSURANCE COMPANY,
a Foreign corporation

        Plaintiff,

vs.                                      CASE NO.:  8:10-cv-313-T24-AEP

AMERICAN BUILDING MATERIALS,
INC., a Florida corporation, KB HOME
TAMPA, LLC, a foreign corporation, and
KB HOME, INC., a foreign corporation,

        Defendants.

_____/

### PLAINTIFF'S DISPOSITIVE MOTION FOR SUMMARY
### JUDGMENT, UNDISPUTED STATEMENT OF FACTS AND
### SUPPORTING MEMORANDUM OF LAW

Plaintiff, AUTO-OWNERS INSURANCE COMPANY, (hereinafter referred to as "AUTO-OWNERS"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 56 and Local Rule for the Middle District of Florida 3.01, moves for summary judgment that AUTO-OWNERS does not have duty to defend or indemnify Defendants, AMERICAN BUILDING MATERIALS, INC., (hereinafter referred to as "ABM"), KB HOME TAMPA, LLC, (hereinafter referred to as "KB TAMPA"), and KB HOME, INC, (hereinafter referred to as "KB").  In support of its motion, AUTO-OWNERS states:

**I.**      **Statement of Material Facts**

        **A.**      **Procedural Background**

      1.      On or about January 25, 2010, KB TAMPA filed a lawsuit against ABM alleging the drywall supplied by ABM is defective in a case styled *KB Home Tampa, LLC v. American Building Materials, Inc.,* Case No. 10-CA-1432, in the Thirteenth

Judicial Circuit in and for Hillsborough County, Florida (hereinafter referred to as the "KB Complaint").

2.     On January 28, 2010, AUTO-OWNERS filed an action for declaratory judgment, seeking a ruling from this Court that it owes no duty to defend or indemnify ABM, KB, and KB TAMPA, for claims arising from defective drywall supplied or installed by ABM.

3.     KB TAMPA was named as a defendant in three class actions (hereinafter referred to as the "Class Actions") pending in Multi-District Litigation in the Eastern District of Louisiana, styled *In re Chinese-Manufactured Drywall Products Liability Litigation,* Case No. 2:09-md-02047-EEF-JCW (Judge Eldon E. Fallon, presiding). Those class actions are styled: *Kenneth and Barbara Wiltz v. Beijing NewBuilding Materials Public Limited Co.,* Case No. 2:2010-CV-00361 (E.D. La. Feb. 10, 2010) (hereinafter referred to as "*Wiltz*"); *Mary Ann Benes v. Knauf Gips KG, et. al.,* Case No. 2:10-CV-00362 (E.D. La. Feb. 10, 2010) (hereinafter referred to as "*Rogers*")[1]; and *David Gross, et. al. v. Knauf Gips, KG, et. al.,* Case No. 09-6690 (E.D. La. March 18, 2010) (hereinafter referred to as "*Gross*").

4.     On May 27, 2010, AUTO-OWNERS filed its Amended Complaint for Declaratory Judgment to which KB and KB TAMPA filed an Answer, Affirmative Defenses and Counterclaim for Declaratory Relief on July 1, 2010.

5.     On July 6, 2010, ABM filed its Answer and Affirmative Defenses to the

---

[1] This is the case name and number as provided in KB and KB Tampa's Counterclaim; it is believed the proper case name is *Rogers v. Knauf Gips, KG, et. al*. Although Mary Ann Benes is listed as a plaintiff in *Abel v. Taishan Gypsum Co., Ltd., et. al*, the *Abel* Omnibus Class Action Complaint (VII) was not filed until January 14, 2001 (after the filing of the Counterclaim).  The *Rogers* and *Abel* cases both name KB Tampa and/or KB as defendants and are identical in substance; for the purposes of this Motion, we will be referring to the *Rogers* Omnibus Class Action Complaint (IV).

Amended Complaint.

6.      On July 26, 2010, AUTO-OWNERS filed its Answer to Counterclaim to the KB and KB TAMPA Counterclaim.

**B.      The Policy**

7.      AUTO-OWNERS issued to ABM a Commercial General Liability policy of insurance (hereinafter referred to as "The Policy"), under policy number 20669817-06, for a policy period of 6/15/2006 to 6/15/2007.  (A copy of The Policy has previously been filed as "Exhibit A" to Plaintiff's Complaint, Docket No. 1).

8.      The Policy lists both KB and KB TAMPA as additional insureds.

9.      The Policy does not cover bodily injury, property damage, or other damages caused by emissions of gases or fumes from the defective drywall.

10.      The Policy also does not cover any costs to repair or replace the defective drywall.

11.      The Policy only provides coverage for "property damage" that occurs during the policy period.

12.      In pertinent part, The Policy provides:

**SECTION 1- COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.  Insuring Agreement.**

a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend any "suit" seeking those damages.  We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result.

b.  This insurance applies to "bodily injury" and "property damage" only if:

    (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    (2)    The "bodily injury" or "property damage" occurs during the policy period; and

    (3)    Prior to the policy period, no insured listed under Paragraph 1. of WHO IS AN INSURED (Section II) and no employee authorized by you to give or receive notice of an "occurrence" or claim, knew or should have known that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized employee knew or should have known, prior to the policy period, that the "bodily injury" or "property damage" occurred, than any continuation, change or resumption of such "bodily injury or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c.  "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of WHO IS AN INSURED (Section II) or any employee authorized by you to give or receive notice of an "occurrence" or claim:

    (1)    Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    (2)    Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    (3)    Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**2.  Exclusions.**

This insurance does not apply to:

a.  "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

\*       \*       \*

b.  "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

\*       \*       \*

f.  (1) "Bodily Injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

\*       \*       \*

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(i) if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor.

\*       \*       \*

(2) Any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

\*       \*       \*

Pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.

\*       \*       \*

k.  "Property damage" to "your product" arising out of it or any part of it.

\*       \*       \*

m.  "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

5

    (1)  A defect, deficiency, inadequacy or dangerous condition in "your product".

*     *     *

n.  Damages claimed for any loss, cost or expense incurred by you or others for loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

    (1)  "Your product";

    (2)  "Your work"; or

    (3)  "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

## SECTION II – WHO IS AN INSURED

1.  If you are designated in the Declarations as:

*     *     *

c.  An organization other than a partnership or joint venture, you are insured.  Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors.

*     *     *

## SECTION V – DEFINITIONS

*     *     *

5.  "Impaired Property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a.  It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b.  You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

6

a.  The repair, replacement, adjustment or removal of "your product" or "your work"; or

b.  Your fulfilling the terms of the contract or agreement.

\*       \*       \*

9.  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*       \*       \*

11. a.  "Products- completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1)  Products that are still in your physical possession; or

(2)  Work that has not yet been completed or abandoned.

b.  "Your work" will be deemed completed at the earliest of the following times:

(1)  When all of the work called for in your contract has been completed.

(2)  When all of the work to be done at the job site has been completed if your contract calls for work at more than one site.

(3)  When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

12.  "Property damage" means:

a.  Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

7

b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

\*       \*       \*

14. "Your product" means:

a. Any good or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1)  You;

(2)  Others trading under your name; or

(3)  A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or sue of "your product"; and

b. The providing of or failure to provide warnings or instructions.

15. "Your work" means:

a.  Work or operations performed by you or on your behalf; and

b.  Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

b. The providing of or failure to provide warnings or instructions.

\*       \*       \*

## II.      Statement of Undisputed Facts

13.      Defendants, KB and KB TAMPA contracted with ABM as a subcontractor to construct and provide building materials in connection with the construction of homes in Florida. *See* KB and KB Counterclaim, ¶ 9.

14.      AUTO-OWNERS issued to ABM a Commercial General Liability policy of insurance under policy number 20669817-06.  (A copy of The Policy has previously been filed as "Exhibit A" to Plaintiff's Complaint, Dkt. 1)

15.      The Policy lists both KB and KB TAMPA as additional insureds.

16.      The Policy defines "pollutant" as "any. . . gaseous . . . irritant or contaminant."   The pollution exclusion provides that a "pollutant," which is an "irritant" or "contaminant," includes "fumes" and "chemicals".  *See* The Policy, Exclusion f.

17.      The Policy's pollution exclusion specifically bars coverage for any loss, cost or expense arising out of any "request, demand or order that . . . others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of pollutants."  *See* The Policy, Exclusion f. (2)(a).

18.      The Policy's pollution exclusion precludes coverage for all "bodily injury" and "property damage" claims "arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants".  *See* The Policy, Exclusion f.(1).

19.      The Policy excludes coverage for "any loss, cost or expense incurred . . . for loss of use, withdrawal, . . . repair, replacement, . . . removal or disposal" of an insured's product, work or impaired property if such product, work or property is "withdrawn from use by any person or organization because of a known . . . defect,

deficiency, inadequacy or dangerous condition in it." *See* The Policy, Exclusion n.

20.      The Policy specifically indicates the policy does not afford coverage to "[p]roperty damage" to "your product" arising out of it or any part of it. *See* The Policy, Exclusion k.

21.      ABM supplied drywall that was installed in numerous residences in Florida for KB and KB TAMPA.  Homeowners of certain of those homes have claimed to have suffered damages arising out of the supply and installation of defective drywall. *See* KB Counterclaim, ¶ 12.

22.      KB TAMPA was named as a defendant in three class actions pending in Multi-District Litigation in the Eastern District of Louisiana, styled *In re Chinese-Manufactured Drywall Products Liability Litigation,* Case No. 2:09-md-02047-EEF-JCW (Judge Eldon E. Fallon, presiding). Those class actions are styled: *Kenneth and Barbara Wiltz v. Beijing NewBuilding Materials Public Limited Co.,* Case No. 2:2010-CV-00361 (E.D. La. Feb. 10, 2010); *Mary Ann Benes v. Knauf Gips KG, et. al.,* Case No. 2:10-CV-00362 (E.D. La. Feb. 10, 2010); and *David Gross, et. al. v. Knauf Gips, KG, et. al.,* Case No. 09-6690 (E.D. La. March 18, 2010).  *See* KB Counterclaim, ¶ 16.

23.      The defective drywall breaks down and releases "sulfides and other noxious gases that are then emitted (or 'off-gassed') from the drywall." *Wiltz* Complaint, ¶ 779; *Gross* Complaint, ¶ 119; *See also Rogers* Complaint ¶¶ 751 and 752.  These sulfides and other noxious gases cause corrosion and damage to personal property (such as air conditioning and refrigerator coils, faucets, utensils, electrical wiring, cooper, electronic appliances and other metal surfaces and property). *Wiltz* Complaint, ¶ 781; *Gross* Complaint, ¶ 120; *See also Rogers* Complaint ¶ 833.  Additionally, the "corrosive

and harmful effects of the sulfide and other noxious gases being released from [the defective drywall] have caused personal injury resulting in eye irritation, sore throat and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm." *Gross* Complaint, ¶ 121; *See also Witlz* Complaint, ¶ 788.  The "sulfides and other noxious gases which have been released from [the defective] drywall . . . are proven hazardous, dangerous, or toxic substances." *Rogers* Complaint, ¶ 851.

24.    KB and KB TAMPA made a claim to AUTO-OWNERS under The Policy to pay "any and all necessary investigation, defense, and repair expenses and other covered costs" resulting from ABM's supply of defective drywall to the affected homes. Counterclaim, ¶ 19.

25.    On or about January 25, 2010, KB TAMPA filed a lawsuit against ABM alleging the drywall supplied by ABM is defective in a case styled *KB Home Tampa, LLC v. American Building Materials, Inc.,* Case No. 10-CA-1432, in the Thirteenth Judicial Circuit in and for Hillsborough County, Florida.  *See* KB Complaint.

WHEREFORE, AUTO-OWNERS INSURANCE COMPANY moves for summary judgment that it has no duty to defend or indemnify Defendants, AMERICAN BUILDING MATERIALS, INC., KB HOME TAMPA, LLC, and KB HOME, INC.

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### I.    Summary

Under Florida law, which applies to the interpretation of insurance policies, certain policy exclusions, in particular the pollution exclusion, apply so that AUTO-OWNERS has no duty to defend Defendants, ABM, KB, and KB TAMPA, in claims

arising out of the defective drywall.  Given there is no duty to defend, there is no duty to indemnify.

## II.      Summary Judgment

Summary judgment is appropriate where there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). The moving party has the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).   An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).   An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id*.

In response, the nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial.*" Fed. R. Civ. P. 56(e) (Emphasis added). *See also* Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e), 28 U.S.C.App., p. 626 (the purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial").   Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289 (1968).   It is not enough for the nonmovant to provide a scintilla of evidence to support its position; instead, there must be evidence on which the jury could reasonably find for the nonmovant. *Anderson*, 477 U.S. at 252.

Here, summary judgment is appropriate because the duty to defend is a matter of law to be decided by this Court, and there are no factual disputes that preclude summary judgment.

## III.     Legal Analysis

### A.     Florida law applies to the interpretation of The Policy

The Court has diversity jurisdiction over the present action and therefore must apply Florida's choice of law rules to determine which state's law to apply. *LaFarge Corp. v. Travelers Indem.*, 118 F.3d 1511, 1515 (11th Cir. 1997).   In the context of insurance contracts, Florida applies the *lex loci contractus* rule, unless a statute modifies or abrogates a choice-of-law rule. *Nova Cas. Co. v. Waserstein*, 424 F. Supp. 2d 1325, 1331 (S.D. Fla. 2006).   Under *lex loci contractus*, the law of the jurisdiction where the contract was executed governs the interpretation of the contract. *Id.*

In this case, Florida law applies to the interpretation of The Policy.   The Policy was executed and delivered in Florida.

### B.     Duty to defend

The interpretation of an insurance contract is a question of law. *Kattoum v. N.H. Indem. Co.,* 968 So.2d 602, 604 (Fla. 2d DCA 2007). Florida law provides that insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties. *Auto-Owners Ins. Co. v. Anderson*, 756 So.2d 29, 34 (Fla. 2000). The scope and extent of insurance coverage is determined solely by the language and terms of the policy. *Bethel v. Sec. Nat'l Ins. Co*., 949 So.2d 219, 222 (Fla. 3d DCA 2006). Florida courts have rejected the doctrine of reasonable expectations and rely upon the plain

language of the policy. *Deni Assocs. of Florida, Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So.2d 1135, 1140 (Fla. 1998).

Under Florida law, whether there is a duty to defend is determined by the allegations of the complaint compared to the policy language. *National Union Fire Ins. Co. v. Lenox Liquors, Inc.*, 358 So.2d 533 (Fla. 1977); *Lawyers Title Ins. Corp. v. JDC (Am.) Corp.*, 52 F.3d 1575, 1580 (11th Cir. 1995). If the pleadings show the applicability of a policy exclusion, the insurer has no duty to defend. *State Farm Fire & Cas. Co. v. Tippett*, 864 So.2d 31, 35 (Fla. Dist. Ct. App. 2003). Likewise, where there is no duty to defend, there is no duty to indemnify if the insured is unable to demonstrate it suffered a covered loss under the policy. *See Celotex Corp. v. AIU Ins. Co.*, 152 B.R. 661 (Bankr. M.D. Fla. 1993).

Comparing the allegations as contained in the KB Complaint and the Class Actions with The Policy determines whether AUTO-OWNERS has a duty to defend. As discussed below, certain policy exclusions preclude coverage so that AUTO-OWNERS owes no duty to defend and no duty to indemnify ABM, KB TAMPA and KB.

**C.     Certain policy exclusions preclude coverage**

The allegations as more fully set out in the KB Complaint and the Class Actions trigger certain policy exclusions, in particular the Pollution Exclusion. As such, AUTO-OWNERS has no duty to defend or indemnify Defendants for any losses related to the defective drywall.

        **1.     The pollution exclusion precludes coverage for the bodily injury and property damage claims**

                **a.     The Policy's pollution exclusion is unambiguous and enforceable**

14

The Policy's pollution exclusion precludes coverage.  Florida courts and courts applying Florida law have consistently found pollution exclusions enforceable if they are unambiguous.  *See, e.g. Deni*, 711 So.2d at 1138 (finding the plain language of the pollution exclusion unambiguous and enforceable); *Dimmitt Chevrolet, Inc. v. Se. Fid. Ins. Corp.*, 636 So.2d 700, 705 (Fla. 1993) (plain language of a pollution exclusion was unambiguous and enforceable).

In *Deni*, the Florida Supreme Court addressed whether a pollution exclusion in a commercial general liability policy precluded coverage for an indoor ammonia spill. Similar to the present case, the pollution exclusion in *Deni* precluded coverage for damages "arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants." *Deni*, 711 So.2d at 1137. The pollution exclusion at issue here adds "seepage" and "migration" in addition to the other types of transmission.  In *Deni*, the definition of "pollutant" was "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalines, chemicals, and waste."  *Id*.  Other than the use of "alkali" instead of "alkalines", the pollution exclusion in this case is identical.

The *Deni* Court found the plain language of the pollution exclusion clear and unambiguous. *Id*. at 1138.  The Court rejected the insured's argument that the pollution exclusion was ambiguous because the policy did not define words such as "irritant" and "contaminant."  *Id*. at 1139.  The Court also rejected the insured's argument that pollution exclusions apply only to industrial and environmental pollution.  *Id*. at 1138-39.

The Court concluded that the policy excluded coverage for the indoor ammonia spill because of the unambiguous language of the pollution exclusion. *Id*. at 1140.

In later rulings, the Eleventh Circuit Court of Appeals ruled that similar pollution exclusions preclude insurance coverage for injuries caused by "pollutants." *See, e.g. Auto-Owners Ins. Co. v. City of Tampa Hous. Auth*., 231 F.3d 1298, 1300-01 (11th Cir. 2000) (finding injuries from ingesting and inhaling lead from old, crumbling paint were precluded by the policy's pollution exclusion); *Admiral Ins. Co. v. Feit Mgmt. Co*., 321 F.3d 1326, 1330 (11th Cir. 2003) (holding injuries caused by toxic fumes caused by a hot water heater were excluded by the policy's pollution exclusion); *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1277 (11th Cir. 2008) (finding that bodily injuries caused by the release of methane gas from construction debris were excluded under the pollution exclusion); *Technical Coating Applicators, Inc. v. United States Fid. & Guar*., 157 F.3d 843, 846 (11th Cir. 1998) (finding that respiratory problems sustained by breathing vapors emitted from roofing products was precluded by a policy's pollution exclusion).

This Court has also enforced pollution exclusions to preclude coverage for bodily injury and property damage. *See, e.g., Continental Cas. Co. v. City of Jacksonville*, 654 F.Supp.2d 1338 (M.D. Fla. 2009) (holding that the pollution exclusion applied to failure to warn about possible pollution related to building on a former dump site); *West American Ins. Co. v. Band & Desenberg*, 925 F.Supp. 758 (M.D. Fla. 1996) (finding that the pollution exclusion applied to indoor air pollution and precluded coverage under the policy); *Lafarge Corp. v. Travelers Indem. Co.*, 927 F.Supp. 1534 (M.D. Fla. 1996)

16

(holding that discharge of pollutants from improper disposal of waste was expected and not within any exceptions to the pollution exclusion).

In the case at bar, The Policy's pollution exclusion is virtually identical to the unambiguous and enforceable pollution exclusions Florida courts have routinely upheld. In light of these cases, The Policy's pollution exclusion precludes coverage for all "bodily injury" and "property damage" claims against the Defendants related to the defective drywall.

### b.     Allegations defective drywall is emitting harmful gases

The KB Complaint alleges the defective drywall is emitting gases that are negatively interacting with other elements where installed and causing damage to the subject homes and other property, including, but not limited to, HVAC coils, certain electrical and plumbing components, and other materials.  KB Complaint, ¶ 12.  Such emissions are pollutants as defined in The Policy.

The Policy defines "pollutant" as "any. . . *gaseous . . . irritant or contaminant*." (Emphasis added).  The pollution exclusion provides that a "pollutant," which is an "irritant" or "contaminant," includes "fumes" and "chemicals."  In determining whether a substance is an "irritant" or "contaminant," "the court should look to see if the disputed substance is alleged to have had a particular effect commonly thought of as 'irritation' or 'contamination'." *Nova Cas. Co.*, 424 F.Supp.2d at 1334 (*citing Deni,* 711 So.2d at 1139).

Even though the description of the property damage and physical injuries are vague in the Counterclaim and KB Complaint, the allegations contained in the Class Actions depict the true nature and extent of the effects of the defective drywall.  It is

17

alleged the subject drywall breaks down and releases "sulfides and other noxious gases that are then emitted (or 'off-gassed') from the drywall." *Wiltz* Complaint, ¶ 779; *Gross* Complaint, ¶ 119; *See also Rogers* Complaint ¶¶ 751 and 752.  These sulfides and other noxious gases cause corrosion and damage to personal property (such as air conditioning and refrigerator coils, faucets, utensils, electrical wiring, cooper, electronic appliances and other metal surfaces and property). *Wiltz* Complaint, ¶ 781; *Gross* Complaint, ¶ 120; *See also Rogers* Complaint ¶ 833.  Additionally, the "corrosive and harmful effects of the sulfide and other noxious gases being released from [the defective drywall] have caused personal injury resulting in eye irritation, sore throat and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm." *Gross* Complaint, ¶ 121; *See also Witlz* Complaint, ¶ 788.  The "sulfides and other noxious gases which have been released from [the defective] drywall . . . are proven hazardous, dangerous, or toxic substances." *Rogers* Complaint, ¶ 851.

It can be inferred from these allegations that the emission of gases from the defective drywall caused irritation and contamination.  These drywall releases, as alleged in the Counterclaim and the Class Actions, fall within the pollution exclusion's definition of "pollutants."  *See Technical Coating,* 157 F.3d at 846 (determining that vapors emitted from roofing products that allegedly caused respiratory problems were pollutants); *Nova Cas. Co.*, 424 F.Supp.2d at 1334 (finding bacteria to be a contaminant because it allegedly "infected the plaintiffs' bodies or made them impure by contact").   It is not necessary for Defendants to classify its damages using the same words as used in a policy to trigger exclusions; using synonyms and broad terms cannot circumvent the plain

meaning of a policy.  *See, e.g. Nova Cas. Co.*, 424 F. Supp. 2d at 1333 (the plain language of the policy will be given the meaning it clearly expresses).

For these reasons, The Policy's pollution exclusion precludes coverage for the bodily injury and property damage claims against ABM, KB and KB TAMPA related to the defective drywall.

### c.      The pollution exclusion bars coverage for any clean up and removal efforts

The Policy's pollution exclusion precludes coverage for inspecting, removing and replacing the defective drywall.  The pollution exclusion specifically bars coverage for any loss, cost or expense arising out of any "request, demand or order that . . . others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of pollutants."

In *James River*, the Eleventh Circuit interpreted a similar pollution exclusion when one of the claims involved the removal of petroleum drums and the surrounding contaminated soil, and disposing of both at a special facility.  540 F.3d at 1272.  The Eleventh Circuit found the claim arose directly out of the alleged discovered pollution so that the pollution exclusion applied to preclude coverage for both the pollution and associated cleanup efforts.  *Id*. at 1275.  As a result, the Eleventh Circuit directed the district court to enter an order granting summary judgment in favor of the insurer.  *Id*. at 1277.

Defendants have demanded AUTO-OWNERS "pay on behalf of KB HOME any and all necessary *investigation*, *defense*, and *repair expenses* and any other *covered costs* arising out of damage resulting from the operations of ABM", to include the supply and

use of the defective drywall by ABM.  *See* KB Counterclaim (Docket 14), ¶ 19 (Emphasis added). As discussed above, based on the allegations in the Counterclaim and the Class Actions, the drywall releases are "pollutants."  Defendants request that AUTO-OWNERS indemnify them for all costs and expenses for the investigation and repair of the affected homes and any other injuries related to the supply of defective drywall from ABM; this demand falls squarely within the pollution exclusion that excludes coverage for testing, removing and cleaning up of pollutants under The Policy.

### 2.      Exclusion "n" precludes costs for a recall from the market

Exclusion "n" excludes coverage for "any loss, cost or expense incurred . . .  for loss of use, withdrawal, . . . repair, replacement, . . . removal or disposal" of an insured's product, work or impaired property if such product, work or property is "withdrawn from use by any person or organization because of a known . . . defect, deficiency, inadequacy or dangerous condition in it."  Multiple courts have upheld Exclusion "n" related to the recall or removal of a defective product from the marketplace.  *See Arcos Corp. v. Am. Mut. Liab. Ins. Co.*, 350 F. Supp. 380, 385 n.2 (E.D. Pa. 1972); *Parker Hannifin Corp. v. Steadfast Ins. Co.,* 445 F. Supp. 2d 827, 834 (N.D. Ohio 2006).  A Florida court has also recognized this exclusion.  *See Aetna Cas. & Sur. Co. v. Deluxe Sys., Inc.,* 711 So.2d 1293, 1297 (Fla. 4th DCA 1998).

Throughout the KB Complaint, reference is made to the "defective" drywall supplied by ABM.  KB Complaint, ¶¶ 11, 12, 17, 18, 24, 25, 29, 31, 41, 42, and 45. Individuals and organizations have ceased purchasing, supplying and installing defective Chinese drywall as its known defects, deficiencies and known dangerous conditions have eliminated its use entirely.  For these reasons, Exclusion "n" would preclude recovery for

all costs incurred for the repair, replacement, removal or disposal of the defective drywall.

### 3. The Policy does not cover claims for removing and replacing the defective drywall

As previously discussed, the Defendants allege the drywall is inherently defective. KB Complaint, ¶¶ 11, 12, 17, 18, 24, 25, 29, 31, 41, 42, and 45. Defendants assert claims for remedying, replacing and removing the defective drywall. KB Complaint, ¶ 29(b). The Policy does not cover claims for removing and replacing the drywall; Exclusion "k" specifically indicates the policy does not afford coverage to "[p]roperty damage" to "your product" arising out of it or any part of it.

Florida law has long recognized that a commercial general liability policy does not cover replacing or repairing a defective product or defective work. *See Auto-Owners Insurance Co. v. Pozzi Window Co.*, 984 So. 2d 1241 (Fla. 2008)*; United States Fire Insurance Co. v. J.S.U.B.*, 979 So. 2d 871 (Fla. 2007); *LaMarche v. Shelby Mutual Ins. Co.*, 390 So. 2d 325 (Fla. 1980).

Florida courts have limited coverage for "property damage" to those instances where a "defective component results in physical injury to some *other* tangible property." *Pozzi Window,* 948 So. 2d at 1248 (Emphasis added). Here, the defective drywall itself did not sustain "property damage"; instead, the pollutants emitting from the defective drywall caused "property damage" to other tangible property.

In *Auto Owners Insurance Company v. Tripp Construction, Inc.*, 737 So. 2d 601, 601 (Fla. 3d DCA 1999), the court held that the homeowners' claims against a contractor for "the actual defects in the construction of the homes, particularly relating to the roofs

of the homes" were not property damage, whereas their claims for damage to other elements of the home caused by the construction defects were property damage. In *West Orange Lumber Company, Inc. v. Indiana Lumbermens Mutual Insurance Company*, 898 So. 2d 1147, 1148 (Fla. 5th DCA 2005), the court held that the cost of removing and replacing the wrong grade of cedar installed by a subcontractor was not property damage.

The Policy at bar does not cover claims for the removal and replacement of the defective drywall as it cannot be classified as "property damage" under The Policy.

## IV.   Conclusion

Florida law applies to the interpretation of The Policy.  Certain policy exclusions, in particular the pollution exclusion, apply so that AUTO-OWNERS has no duty to defend ABM, KB and KB TAMPA in any claims arising from the defective drywall. Where there is no duty to defend and no applicable coverage, there is no duty to indemnify.

Based on the foregoing, AUTO-OWNERS INSURANCE COMPANY moves for summary judgment that it has no duty to defend or indemnify Defendants, AMERICAN BUILDING MATERIALS, INC., KB HOME TAMPA, LLC and KB HOME, INC, and for any further relief the Court deems appropriate under the circumstances.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on **April 20, 2011**, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:  Ron A. Mattson, Esquire, Law Office of Thamir A.R. Kaddouri, Jr., P.A., rmattson@tampalaw.org (Attorney for American Building Materials, Inc.), Thamir A.R. Kaddouri, Jr., Esquire, Law Office of Thamir A.R. Kaddouri, Jr.,

P.A., thamir.kaddouri@tampalaw.org (Attorney for American Building Materials, Inc.)

and Charles A. Carlson, Esquire, Barnett, Bolt, Kirkwood, Long & Mcbride,

ccarlson@barnettbolt.com  (Attorney for KB Home).


/s/ Michael S. Rywant_____
Michael S. Rywant, Esquire, Trial Counsel
FBN: 240354
mrywant@rywantalvarez.com
Amy M. Ferrera, Esquire, Trial Counsel
FBN: 15313
aferrera@rywantalvarez.com
RYWANT, ALVAREZ, JONES, RUSSO
& GUYTON, P.A.
109 North Brush Street
Tampa, Florida  33602
Tel:     (813) 229-7007
Fax:     (813) 223-6544
Attorneys for Plaintiff Auto-Owners