IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AUTO-OWNERS INSURANCE COMPANY,
a foreign corporation,

Plaintiff,

CASE NO.: 8: 10-cv-313-T24-AEP

vs.

AMERICAN BUILDING MATERIALS,
INC., a Florida corporation, KB HOME
TAMPA, LLC, a foreign corporation, and
KB HOME, INC., a foreign corporation,

Defendants.
_____/

## DEFENDANT KB HOME'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendants, KB Home Tampa, LLC and KB Home, Inc. (collectively, "KB Home"), pursuant to Fed. R. Civ. P. 56, Rule 3.01, M. D. Fla. Rules, and this Court's Case Management and Scheduling Order dated August 24, 2010, file this Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment filed by plaintiff, Auto-Owners Insurance Company ("AOI").

### I. SUMMARY OF THE OPPOSITION

As the injured party named by AOI in this coverage action, KB Home has independent standing to litigate the matter of coverage as pertains to the Policy[1] between AOI and its insured American Building Materials, Inc. ("ABM"). In that regard, KB Home has filed a Motion for Summary Judgment as to Named Insured Coverage demonstrating that there is no genuine

---

[1] The subject Commercial General Liability policy (the "Policy") is attached to AOI's Amended Complaint (DE 8) as Exhibit "1."

disputed issue of material fact and that ABM is entitled to defense and indemnity coverage with regard to the claim advanced against it by KB Home in the underlying state court action[2] as a matter of law. (DE 35, 42, hereinafter "KB Home Motion") In AOI's Motion for Summary Judgment, AOI relies exclusively on three exclusions contained in the Policy. The summary judgment evidence and arguments presented in the KB Home Motion directly address and refute the asserted application of these three relied upon exclusions. In fact, the KB Home Motion shows not only that the AOI Motion should be denied, but that ABM is entitled to defense and indemnity coverage under the Policy as a matter of law. Therefore, KB Home incorporates the KB Home Motion and supporting Affidavit herein. (DE 35, 42)

AOI relies primarily upon the so-called "absolute" pollution exclusion at section I.2.f. of the Policy. In order for the "absolute pollution exclusion" to apply, however, the insurer must show more than that the alleged "bodily injury" or "property damage" arises out of "pollutants." The "absolute" pollution exclusion also requires that the insurer prove that the circumstances of the claim fit within one of the four limiting subsections included within the language of the exclusion. See, *Policy*, § I.2.f.(1)(a)-(d). AOI's Amended Complaint (DE 8 at ¶ 18, p. 5) and its Motion for Summary Judgment (DE 43, ¶ 12, p. 5) both assert that this case is governed by subsection (d)(i) of the Policy's pollution exclusion. That subsection applies the pollution exclusion to a release or escape of pollutants "[A]t or from any premises, site or location on which any insured…[is] *performing operations*" (emphasis added). As KB Home demonstrates in its Motion for Summary Judgment, AOI cannot show that "property damage" occurred from a release of pollutants while operations of either ABM or KB Home were "ongoing." (DE 35 at p.

---

[2]  KB Home is suing ABM in the underlying action currently pending in the Thirteenth Judicial Circuit, Hillsborough County, Florida styled, *KB Home Tampa, LLC v. American Building Materials, Inc.*, Case No. 10-CA-01432 (hereinafter the "Underlying Complaint" or "Underlying Action"). (DE 42, Ex. "1")

2

14-16). In fact, AOI's Motion does not even address subsection (d)(i) and thereby wholly fails to show that the pollution exclusion applies.

The other two exclusions relied upon by ABM are also thoroughly addressed in the KB Home Motion. (DE 35 at p. 16-19). Neither exclusion is applicable as a matter of law. Because there is no record evidence of the product recall of *any* Chinese drywall (CDW) products, let alone "sister" products to the CDW supplied by ABM to KB Home in this case, "sistership" exclusion of set forth at 2.n of the Policy clearly does not apply.

Further, the ABM supplied drywall did not cause any property damage until it was installed in the Affected Homes, at which time it was part of an improvement to real property and therefore, itself real property. Therefore, because the Policy definition of "Your product" excludes real property, exclusion 2.k. does not apply. Moreover, 2.k., if applicable, only excludes damage to the ABM supplied drywall itself, not to the extensive damage to other property that it caused in the Affected Homes. There is no evidence that there is "property damage" to the drywall itself. However, it is undisputed that, at the time repairs are made, the ABM drywall must be removed in order to "get to" the damage to other property. Exclusion 2.k. is inapplicable to the property damage alleged in the Underlying Action.

KB Home also has filed a counterclaim seeking coverage in its own right as an Additional Insured under the Policy. (DE 14) Because AOI's Motion relies upon three inapplicable exclusions that do not operate to deny coverage to ABM as a matter of law, the Motion also fails with regard to KB Home's counterclaim. No independent basis is advanced by AOI for denial of KB Home's claim as Additional Insured. Therefore, the AOI's motion must also be denied as to KB Home's counterclaim.

## II. ARGUMENT

### A. KB Home has Standing to Litigate ABM's Coverage Under the Policy as Well as Coverage of KB Home as Additional Insured.

An injured party, such as KB Home, who has been named in a coverage lawsuit between an insurer and its named insured, has standing to litigate the named insured's coverage issues. See, *Dairyland Insurance Co. v. Makover*, 654 F. 2d 1120, 1123 (5th Cir. 1981)(injured party as potential judgment creditor has standing to adverse coverage decision); *Monticello Insurance Co. v. Dynabilt Manufacturing Company, Inc.*, 2005 WL 3019241 (M.D. Fla. 2005)(dismissal of coverage action after default judgment against named insured would prejudice injured party who has standing in its own right to litigate coverage issues); *Mid-Continent Casualty Company v. Frank Casserino Construction, Inc.*, 2010 WL 2431900 (M.D. Fla. 2010) (same). See also, *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 61 S. Ct. 510, 512-513 (1941)("actual controversy" under Federal Declaratory Judgment Act exists between injured party and insurer for tortfeasor). Therefore, KB Home has standing to be heard, in its own right and not derivatively, in opposition to AOI's Motion for Summary in which AOI claims that it has no duty to defend or to indemnify ABM under the Policy for damages asserted in the Underlying Action. KB Home, independently, also has standing to oppose the Motion for Summary Judgment as it pertains to KB Home's claim as an Additional Insured under the Policy.

### B. AOI has a Heavy Burden to Prove that Policy Exclusions Apply to Defeat Coverage.

The insurer has the burden of proving the applicability of any exclusion to coverage under a policy. *U.S. Concrete Pipe Co. v. Bould,* 437 So. 2d 1061, 1065 (Fla. 1983); *Herrera v. C.A.Suguros Catatumbo,* 844 So. 2d 664, 668 (Fla. 3d DCA 2003). Whenever an insurer relies upon an exclusion to deny defense coverage, the insurer has the burden of proving that the

4


allegations of the underlying complaint are solely and entirely within the policy exclusion. *Castillo v. State Farm Fla. Ins. Co.*, 971 So. 2d 820, 824 (Fla. 3rd DCA 2007); *Northland Casualty Co. v. HBE Corporation*, 160 F. Supp 2d 1348, 1359 (M.D. Fla. 2001); *IDC Construction, LLC v. Admiral Insurance Co.*, 339 F. Supp. 2d 1342, 1348 (S.D. Fla. 2004). Exclusionary clauses are disfavored and are always strictly construed in favor of coverage. *Westmoreland v. Lumbermens Mut. Cas. Co.,* 704 So. 2d 176, 179 (Fla. 4th DCA 1997).

Rule 56 provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must view the facts in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and must draw "all justifiable inferences in [its] favor ...." *United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1437 (11th Cir.1991) (en banc) (internal quotation marks omitted). At the summary judgment stage, the Court may not weigh the evidence or make credibility determinations. *Chapman v. American Cyanamid Co.,* 861 F.2d 1515 (11th Cir.1988).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, the movant's summary judgment initial burden "varies depending on whether the legal issues, as to which the facts in question pertain, are ones on which the

movant or the non-movant would bear the burden of proof at trial." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993). If the movant bears the burden of proof at trial, that party "must show that, on all the essential elements of its case, ... no reasonable jury could find for the non-moving party." *Four Parcels*, 941 F.2d at 1438. Therefore, because AOI bears the burden of proof at trial regarding the application of exclusions, AOI must affirmatively show that no reasonable jury could find for ABM or KB Home on any essential element of its case for applying the exclusion or exclusions.

When the movant fails to make the required showing, summary judgment should be denied. However, if the movant carries its initial burden, the non-movant may avoid summary judgment by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." *Id.* at 608. When the movant has the burden of proof at trial, the non-movant may avoid summary judgment by coming forward with evidence sufficient to withstand a motion for directed verdict at trial. *Fitzpatrick*, 2 F.3d at 1116.

### C. AOI Has Failed to Show That it is Entitled to Summary Judgment on the Basis of Policy Exclusions.

#### 1. AOI has failed to show that the "absolute" pollution exclusion is applicable in the circumstances of this case.

AOI relies upon the "absolute" pollution exclusion set out at I.2.f. of the Policy, urging that this case falls under f.1.(d)(i) which provides an exclusion for:

> f. (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:
>
> (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf *are performing operations:*

        (i)    if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor.

*Policy,* 2.f.1(d)(i) (emphasis added).   (DE 8 at ¶ 18, p. 5 and DE 43, ¶ 12, p. 5)  For the exclusion to apply, the "property damage" in the Underlying Action must arise out of "pollutants"…"[a]t or from any site or location on which you or any contractors or subcontractors working directly or indirectly on any insured's behalf *are performing operations....*" *Policy,* I.2.f.1.(d)(i). (emphasis added).  However, AOI's Motion for Summary Judgment addresses neither whether, nor how, the circumstances of the Underlying Action fall within subsection (d)(i).

    As detailed in KB Home's Motion for Summary Judgment, the phrase "are performing operations" is intended to bar coverage for a release of "pollutants" that occurs while the insured's work is being performed.  This is to be distinguished from the Policy's coverage for "completed operations", which provides coverage for damages that occur after the insured's operations have been completed. (*Policy,* dec. sheet and V.11.)  See, *Southern Guaranty Ins. Co. v. Zantop International Airlines, Inc.*, 767 F. 2d 795, 799 (11th Cir. 1985)("completed operations coverage is distinct from 'premises-operations' coverage which insures against damage arising from the ongoing activities of the operation of a particular business.")  AOI has not met its summary judgment burden of showing that the claim allegedly arising from "pollutants" occurred while operations of either ABM or KB Home were on-going.  In fact, the undisputed evidence is to the contrary. (DE 35 at p. 14-16; DE 42)

    A recent district court ruling in a Chinese drywall matter is highly persuasive.  In *Scottsdale Insurance Company v. American Safety Indemnity Co.,* Judge Steel interpreted subsection (d)(1) of the identical "absolute" pollution exclusion precisely as urged by KB Home

7

herein. See, *Order*, Case No. 10-0445-WS-N, (S.D. Ala., November 23, 2010) attached hereto[3]. The district court acknowledged that the underlying actions involved in that case alleged bodily injury or property damage "arising out of" the "discharge," "release" or "escape" of "pollutants" as those phrases are used in the "absolute" pollution exclusion. *Id.* at p. 9. However, the Court stated:

> [T]he Pollution Exclusion applies only to losses arising from the discharge of pollutants from a site where Mitchell or its agents "are performing operations." The language is unequivocally present tense. A reasonable interpretation of the plain words found in subsection f.(1)(d)(i) is that the release of pollutants and the insured's performance of operations must occur contemporaneously for the Pollution Exclusion to apply.

*Id.* at p. 10.

The district court observed that the "absolute" pollution exclusion does **not** state that coverage is barred for losses from pollutant releases at locations where the insured or its contractors "are performing ***or have previously performed operations***." *Id.* (emphasis added). The court further noted that the property damage, like such damage in this case, relates to discharges from Chinese drywall that occurred well after the operations of the insured had been completed. "This temporal disconnect appears on its face to undermine application of the Pollution Exclusion here." *Id.*

Judge Steele's Order states, "the plain language of the Pollution Exclusion limits its reach to pollutant releases at locations where the insured contemporaneously performs operations, rather than pollutant releases at locations where the insured performed operations … earlier." *Id.* at 12. The well reasoned interpretation of the identical "absolute" pollution exclusion in the *American Safety Idemnity Co.* case applies squarely to the application of the very same exclusion

---

[3] Judge Steele's Order was inadvertently characterized as an Order on Summary Judgment in KB's Motion. In fact, the Order was in the context of a ruling on a Rule 12(b)(6) motion to dismiss.

in this case. *See*, (DE 8 at ¶ 18, p. 5 and DE 43, ¶ 12, p. 5). To the extent "property damage" was caused by "pollutants" in this case, AOI has not presented any argument or evidence that such occurred while either ABM or KB Home were actively "performing operations." *See*, (DE 35 at p. 14-16; DE 42). In fact, the Underlying Complaint alleges that KB Home first received notice of problems from the ABM supplied drywall after construction was completed which was long after ABM supplied drywall. *Underlying Complaint*, ¶ 9.

According to its plain language, the "absolute" pollution exclusion does not apply unless the insurer proves that the circumstances of the claim fit within one of the four subsections provided for in the language of the exclusion. *Policy*, § I.2.f.(1)(a)-(d). *Mt. Hawley Insurance Co. v. Dania Distribution Centre, Ltd.*, WL 346528 (S.D. Fla., Jan. 31, 2011)(absolute "pollution exclusion clause contains four disjunctive subsections, meaning the exclusion applies if any one of the four conditions is met"). See, *U.S. Concrete Pipe Co.,* 437 So. 2d at 1065 (insurer has the burden of proving that a policy exclusion applies); *Castillo*, 971 So. 2d at 824 (insurer has the burden of proving that the allegations of the underlying complaint are solely and entirely within the policy exclusion); *J.S.U.B., Inc. v. U.S. Fire Ins. Co.*, 906 So. 2d 303, 307 (Fla. 2005)(court is required to construe insurance policy in accordance with its plain language). The fact that the definition of "pollutants" and the "arising under" language of the exclusion are broadly phrased does not detract from the fact that subsections f.(1)(a)-(d) are *limiting* clauses which *narrow* the application of the otherwise broadly phrased exclusion. *Excelsior Ins. Co. v. Pomona Park Bar & Package Store*, 369 So. 2d 938, 941 (Fla. 1979)(qualifying clauses in policy exclusion "limit the scope of the exclusion").

AOI is relying on subsection (d)(i) as part of its case that the pollution exclusion should be applied to the "property damage" alleged in the Underlying Action. (DE 8 at ¶ 18, p. 5 and

9

DE 43, ¶ 12, p. 5). While AOI's motion cites Florida, Eleventh Circuit and Middle District of Florida cases interpreting and applying versions of the pollution exclusion, including the "absolute" pollution exclusion (DE 43, p. 12-14), none of those cases address or even mention subsection (d)(i). Correspondingly, AOI does not mention any of the other qualifying clauses under the pollution exclusion, relying exclusively on subsection (d)(1) in its pleadings and its motion. Therefore, since subsection (d)(i) is an issue in this case and was not an issue in the cases relied upon by AOI, the cited cases are not controlling.

Plainly, subsections f.(1)(a)-(d) limit the application of the broader language that is part of the pollution exclusion. *Pomona Park Bar & Package*, 369 So. 2d at 941 (qualifying clauses in policy exclusion "limit the scope of the exclusion"). In interpreting an insurance policy, Florida law requires the court look at the policy as a whole, and give meaning to all policy terms. *Id.* AOI has the burden of proving that the allegations in the Underlying Complaint are solely and entirely within the Policy exclusion. *Castillo*, 971 So. 2d at 824. Because AOI has failed to carry its summary judgment burden of proving all necessary elements of the "absolute" pollution exclusion apply to the property damage alleged in the Underlying Action, its summary judgment motion must be denied as to both ABM and KB Home.

    **2. The Underlying Complaint does not seek recovery for pollution "clean up" or "removal" expenses and therefore the exclusion for such expenses is not applicable.**

In the Underlying Complaint, KB Home seeks to recover from ABM damages incurred because the "Chinese Drywall supplied by" ABM is "causing damage to the Subject Homes and other property, including, but not limited to, HVAC coils, certain electrical and plumbing components, and other affected materials." *Underlying Complaint*, ¶ 12. There is no demand that ABM or any other person "test for, monitor, clean up, remove, contain, treat, detoxify or

neutralize" any pollutants. *Compare, Policy,* § I.2.f.(2) to *Underlying Complaint.* See, *Castillo,* 971 So. 2d at 824 (insurer has the burden of proving that the allegations of the underlying complaint are solely and entirely within the policy exclusion).

*James River Ins. Co. v. Ground Down Engineering, Inc.*, 540 F. 3d 1270 (11th Cir. 2008), relied upon by AOI, is distinguishable. The underlying case in *James River* was a professional negligence action against an engineering firm that allegedly failed to properly perform a Phase I Site Assessment of real property that was integral in order for the client to qualify for the "innocent landowner defense" under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA). *Id.* at 1272. The Phase I report failed to show the existence of buried 55 gallon petroleum drums and construction debris. *Id.* The underlying action alleged that, due to the engineer's negligence, the plaintiff/client suffered damages because it "had to remove the drums and the surrounding soil and dispose of them at a special waste facility" and because it incurred other "expensive environmental remediation." *Id.* The court held that such damages were within the exclusionary language of 2.f.(2). *Id.* at 1275-1276. The damages in the underlying case at issue in *James River* materially contrast with the damages sought in the Underlying Complaint, which relate to property damage to "HVAC coils, certain electrical and plumbing components, and other affected materials" in the homes in which the ABM supplied Chinese drywall was installed. *Underlying Complaint*, ¶ 12. Because there is no claim in the Underlying Action for costs or expenses that are within the language of 2.f.(2), that exclusion does not apply.

AOI contends that KB Home's demand in its counterclaim for "all necessary investigation, defense, and repair expenses and any other covered costs arising out of damage resulting from the operations of ABM" constitutes a claim within exclusion 2.f.(2). (DE 43 at p.

11

17). This argument is without merit. The Policy provides for "Supplementary Payments – Coverages A and B." *Policy, § I, "Supplementary Payments."* Paragraph 4 under Supplementary Payments provides for payment by AOI of "[A]ll reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim…." *Policy, § I, "Supplementary Payments,* ¶ 4. KB Home's demand in the *ad damnum* clause of its Counterclaim for payment of "investigation" and "defense" expenses is pursuant to the Policy provision for Supplementary Payments. Because AOI has not accepted coverage of KB Home's claim as Additional Insured, KB Home has incurred and paid attorney's fees, costs and investigative expenses associated with defending the claim which KB Home contends is the obligation of AOI under the Policy. These expenses are recoverable against AOI. *See*, *Bellsouth Telecommunications, Inc. v. Church & Tower of Florida, Inc.*, 930 So. 2d 668, 671 (Fla. 3rd DCA 2006 (where insurer refuses to defend and it is later determined that insurer had duty to defend, insured is entitled to reimbursement of litigation costs). Accordingly, the Counterclaim does not seek recover of expenses within the contemplation of 2.f.(2). (DE 14).

AOI has failed to carry its summary judgment burden of showing that the Underlying Action seeks damages within exclusion 2.f.(2). Moreover, if the provision did apply, it would, by its plain terms, exclude only the "loss, cost or expense" itemized in 2.f.(2). Since there is indisputably a claim for property damage asserted in the Underlying Action, that claim is unaffected by 2.f.(2) even if it did apply. Because no "loss, cost or expense" itemized in 2.f.(2) is part of any claim in this case, exclusion 2.f.(2) is inapplicable and does not support AOI's Motion for Summary Judgment.

### 3. Exclusion 2.n. is inapplicable.

KB Home's Motion details several reasons why the "sistership" exclusion at 2.n. of the Policy is inapplicable in this case. (DE 35 at p. 19-20). The purpose of the exclusion is "to limit the insurer's exposure in cases where, because of the actual failure of the insured's product, *similar products are withdrawn from use to prevent the failure of these other products, which have <u>not yet failed</u>*, but are suspected of containing the same defect." *Honeycomb Systems, Inc. v. Admiral Insurance Co.,* 567 F. Supp. 1400, 1406 (D. Me. 1983)(emphasis added). *See, Harris Specialty Chemicals, Inc.* at n. 8 (because no assertion that product was recalled, prompting repairs on units not exhibiting damage, exclusion did not apply). There is no evidence in the record that the ABM supplied Chinese drywall has been "withdrawn or recalled from the market," let alone that similar products that are suspected of containing the same defect have been recalled. *Policy,* I.2.n. The exclusion simply does not apply.

Cases relied upon by AOI support KB Home's argument that 2.n. is inapplicable. In *Arcos Corp. v. American Mut. Liab. Ins. Co.*, 350 F. Supp 380 (E.D. Pa. 1972), the court rejected an insurer's argument that exclusion 2.n. applied. *Id.* at 384-385. In *Arcos*, the insured manufacturer of welding wire was sued by General Dynamics who sought to recover damages by reason of it having to "reinspect, rip-out, replace and repair various welds." *Id.* at 384. The manufacturer's insurance company argued that 2.n. applied. In rejecting the application of exclusion 2.n., the district court held:

> That provision applies only if the product or property of which it is a part is "withdrawn from the market or from use" by the insured, and even in such situations, the policy still covers damages caused by the product that failed. Arcos did not recall or withdraw any product claimed to be defective by a buyer, and its claim for damages does not include any expenses for such action.

*Id.* at 385.

Similarly, in *Parker Hannifin Corp. v. Steadfast Ins. Co.*, 445 F. Supp. 2d 827 (N.D. Ohio 2006), also relied upon by AOI, the court ruled:

> The provision [2.n.] is intended to exclude from coverage the cost of preventative or curative action by the withdrawal of a product in situations in which a danger is to be apprehended. It is not, however, intended to exclude from coverage damages caused by the very product whose failure to perform properly aroused apprehension about the quality of 'sister' products. Still less is it intended to exclude from coverage damages arising from the malfunctioning of a product where no 'sister' products are involved.

*Id.* at 834. Here, there is nothing in the record to indicate there was any "product recall" or any "sister" product involved at all. Exclusion 2.n. does not apply as a matter of law.

### 4. Exclusion 2.k. does not apply.

AOI contends that the "your product" exclusion at 2.k. of the Policy excludes liability under the Policy for the costs of the removal and replacement of the ABM supplied Chinese drywall. (DE 43 at p. 18-19) However, the Policy defines "your product" as: "Any goods or products, *other than real property* ... sold … by … you." *Policy,* V.14.a. As discussed at length in KB Home's Motion, the ABM supplied drywall did not cause property damage until after it was installed in the Affected Homes. (DE 35 at p. 15; DE 42 at ¶ 7). By that time, the drywall was part of an improvement to real property and, therefore, itself real property under Florida law. *See,* authorities cited at DE 35, p. 15. Therefore, the "your product" exclusion at 2.k. of the Policy does not apply.

The foregoing is perfectly consistent with the "products-completed operations hazard" coverage provided under the policy[4]. "Products-competed operations" provides coverage for property damage arising out of the insured's "work" or "product" after the insured's operations

---

[4] Note that the Policy provides a $2 million limit for products-completed operations coverage and by endorsement a reinstatement of such limits if exhausted. *Policy*, dec. sheet, endorsement 55091.

are completed. *Policy,* V. 16. ABM's work was completed upon its delivery of the Chinese drywall (DE 42 at ¶ 4 ) and KB Home's operations are complete when the construction is completed. There is no dispute in this case that the claimed damages are within the "products-completed operations hazard" coverage. The "your product" exclusion dovetails with the definition of "products-completed operations hazard" coverage such that the exclusion is not applicable in the context of *completed* operations. Compare, *Policy*, I.2.l. which specifically excludes certain coverage included in the products-completed operations hazard. Therefore, by definition, the "your product" exclusion does not apply in this case in which completed operations coverage is applicable.

Moreover, the Underlying Action seeks to recover for "property damage" to "the Subject Homes and other property, including, but not limited to, HVAC coils, certain electrical and plumbing components, and other affected materials." *Underlying Complaint*, ¶ 12. Judge Fallon has determined in the Chinese drywall MDL that all wiring in CDW affected homes must be removed and that replacement of the electrical wires requires access to the wall cavities that are covered by drywall. *Findings and Conclusions of Law*, April 8, 2010, pp. 38-39, MDL 2047, Fallon, J. presiding. Thus, ABM's "product" must be removed in order to "get to" other property that has been damaged by the ABM supplied drywall. Exclusion 2.k. is thus inapplicable to any "property damage" in the Underlying Case. Certainly, exclusion 2.k. does not supply a basis to deny ABM a defense or indemnity as a matter of law.

### III. CONCLUSION

For all of the foregoing reasons, and in light of the summary judgment evidence and arguments filed in connection with KB Home's Motion for Summary Judgment, AOI's Motion for Summary Judgment should be denied.

Respectfully submitted,

BARNETT, BOLT, KIRKWOOD
LONG & MCBRIDE

s/Charles A. Carlson
Charles A. Carlson, Esq.
Florida Bar # 716286
Amy E. Stoll, Esq.
Florida Bar #150959
601 Bayshore Boulevard, Suite 700
Tampa, Florida  33606
(813) 253-2020
(813) 251-6711-Facsimile

and

NEWMEYER & DILLION, LLP
Gregory L. Dillion, Esq.
Alan H. Packer, Esq.
Bonnie T. Roadarmel, Esq.
895 Dove Street, 5th Floor
Newport Beach, CA 92660
(949) 854-7000/(949) 854-7099 Facsimile

Co-Counsel for KB HOME TAMPA, LLC
and KB HOME, INC.

**Certificate of Service**

I hereby certify that on this _____ day of May, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

s/Charles A. Carlson

bbkldocs-#517594-v1-resp_to_aoi_msj.doc