UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AUTO-OWNERS INSURANCE COMPANY,

    Plaintiff,

v.                                                            Case No.: 8:10-cv-313-T-24-AEP

AMERICAN BUILDING MATERIALS, INC.,
KB HOME TAMPA, LLC, and
KB HOME, INC.,

    Defendants.
_____/

**O R D E R**

This cause comes before the Court on the parties' cross motions for summary judgment. (Dkts. 35, 37, 42, 43, 44, 45, 46.) This is an action to determine whether Plaintiff Auto-Owners Insurance Company ("Auto-Owners") has a duty to defend or indemnify its named insured, Defendant American Building Materials, Inc. ("ABM"), in an underlying state court action brought by Defendant KB Home Tampa, LLC against ABM. Defendants KB Home Tampa, LLC, and KB Home, Inc., (collectively, "KB Home") move for entry of a declaratory judgment that Auto-Owners has both a duty to defend and a duty to indemnify ABM in the underlying action, while Auto-Owners moves the Court to declare that it does not.[1]

**I.**    **Background and Facts**

This action arises out of property damage suffered by homeowners who purchased homes from KB Home that was caused by the installation of imported Chinese drywall in the subject homes. During the housing boom in the mid-2000's, drywall was imported from China to meet

---

[1]ABM joined KB Home's motion for summary judgment and its response in opposition to Auto-Owners's motion for summary judgment. (Dkts. 37, 46.)

construction demands. Sometime after the installation of such Chinese drywall, homeowners began to complain of emissions or smelly gasses, the corrosion and blackening of metal wiring, surfaces, and objects, and the failure of HVAC units and appliances. Such property damage has been attributed to Chinese drywall.

ABM is a Tampa, Florida supplier of drywall and other building materials. Pursuant to a subcontract, ABM supplied KB Home with Chinese drywall that was installed in numerous homes in Hillsborough County, Florida. Once homeowners began to complain of problems in their homes, KB Home began to address those complaints and perform repairs to the affected homes. Numerous lawsuits were initiated against KB Home and others, including multiple omnibus class actions pending in multi-district litigation in the Eastern District of Louisiana.

The following facts are undisputed:

Auto-Owners issued a Commercial General Liability Policy to ABM, policy number 20669817-06, for the period from June 15, 2006 through June 15, 2007. The policy lists both KB Home Tampa, LLC and KB Home, Inc., as additional insureds. The policy covers "property damage" that occurs during the policy period. The policy also contains several relevant exclusions as discussed below.

KB Home contracted with ABM as a subcontractor to provide building materials to be used in the construction of homes in Florida. In paragraph 12 of that subcontract, ABM assumed the tort liability of KB Home for property damage to third parties. ABM supplied drywall to KB Home that was installed in numerous homes in Florida. Homeowners of certain of those homes claimed to have suffered property damages arising out of the supply and installation of defective drywall. In July 2009, KB Home made a claim to Auto-Owners under the policy to pay any

costs for the investigation, defense, and repairs that resulted from ABM's supply of defective drywall to the affected homes.

On or about January 25, 2010, KB Home filed a lawsuit against ABM, seeking to recover damages suffered by KB Home arising out of the defective drywall supplied by ABM. That case is styled *KB Home Tampa, LLC v. American Building Materials, Inc.*, Case No. 10-CA-1432 ("the underlying lawsuit"), and it is currently pending in the Thirteenth Judicial Circuit in and for Hillsborough County, Florida. Auto-Owners is currently providing a defense to ABM in the underlying lawsuit under a reservation of rights.

On January 28, 2010, Auto-Owners brought the instant lawsuit against KB Home and ABM seeking a declaration that it owes no duty to defend or indemnify ABM in the underlying lawsuit. (Dkt. 1.) On May 27, 2010, Auto-Owners filed its Amended Complaint for Declaratory Judgment to which KB Home filed an answer, affirmative defenses, and counterclaim for declaratory relief on July 1, 2010. (Dkts. 8, 14.) ABM answered Auto-Owners's Amended Complaint on July 6, 2010. (Dkt. 16.)

**II.     Standard of Review**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Id.*

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Johnson v. Bd. of Regents*, 263 F.3d 1234, 1243 (11th Cir. 2001) (quotations and citation omitted).

When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Porter*, 461 F.3d at 1320. In determining whether there is a "genuine" issue, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

**III.    Discussion**

KB Home seeks a declaration that Auto-Owners has a duty to defend and to indemnify ABM under the policy for damages asserted against ABM in the underlying lawsuit. KB Home points to the following provision in the policy, which, it contends, provides coverage:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We have the right and duty to defend any "suit" seeking those damages.

(Dkt. 1, Policy at I.A.1.a.) "Property damage" under the policy means "[p]hysical injury to tangible property" or "[l]oss of use of tangible property that is not physically injured." (Dkt. 1, Policy at V.12.)

The parties do not dispute that the underlying lawsuit by KB Home against ABM is a "suit" for "property damage," as those terms are defined in the policy. Nor is there any dispute

that there was in fact an "occurrence" of "property damage" within the "coverage territory" and during the policy period, as those terms are defined within the policy. Thus, KB Home contends that there is no genuine dispute of material fact that there is coverage under the policy for the claims asserted against ABM in the underlying lawsuit.

Auto-Owners's position, however, is that the allegations contained in the underlying lawsuit, as well as the class actions pending in multi-district litigation,[2] trigger certain coverage exclusions contained in the policy. As such, Auto-Owners seeks a declaration that, because coverage is excluded under the policy, it has no duty to defend or indemnify ABM for any losses related to the defective drywall.

The insurer has the burden of proving the applicability of any exclusion to coverage under a policy. *U.S. Concrete Pipe Co. v. Bould*, 437 So. 2d 1061, 1065 (Fla. 1983); *Herrera v. C.A. Seguros Catatumbo*, 844 So. 2d 664, 668 (Fla. 3d DCA 2003). "[W]hen an insurer relies on an exclusion to deny coverage, it has the burden of demonstrating that the allegations of the [underlying] complaint are cast solely and entirely within the policy exclusion and are subject to no other reasonable interpretation." *Castillo v. State Farm Fla. Ins. Co.*, 971 So. 2d 820, 824 (Fla. 3d DCA 2007) (quoting *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1359

---

[2]The specific question of whether Auto-Owners owes a duty to defend or indemnify ABM in the class actions pending in multi-district litigation is beyond the scope of this litigation. Auto-Owners's Amended Complaint for Declaratory Judgment makes no reference to the cases pending in multi-district litigation. Moreover, the parties did not file copies of the class action complaints with this Court, and thus, the Court is unable to determine whether the specific claims asserted in those complaints are covered by the policy.

A copy of the complaint in the Florida state court case was filed with this Court, and the Court has compared the claims asserted therein with the insurance policy at issue. The Court's ruling, therefore, is limited to Auto-Owners's duty to defend and indemnify the defendants in that underlying lawsuit only. The Court makes no finding regarding whether a duty to defend and indemnify exists in cases pending in multi-district litigation, or in any other lawsuit.

(M.D. Fla. 2001)). Exclusionary clauses are disfavored and are "always strictly construed" in favor of the broadest coverage. *Westmoreland v. Lumbermens Mut. Cas. Co.*, 704 So. 2d 176, 179-80 (Fla. 4th DCA 1997) (citing *State Farm Fire & Cas. Ins. Co. v. Deni Assoc. of Fla., Inc.*, 678 So. 2d 397 (Fla. 4th DCA 1996) (ruling that if an exclusion is not stated with sufficient clarity, then the rule of strict construction requires a construction in favor of the insured)).

    A.    **Exclusion 2.f.: The Pollution Exclusion**

Auto-Owners primarily relies on the policy's pollution exclusion to advance its position that coverage for "property damage" is precluded. The Court begins by comparing the language of the pollution exclusion to the claims asserted in the underlying lawsuit. *See Scottsdale Ins. Co. v. Amer. Safety Indemnity Co.*, No. 1:10-cv-0445-WS-N, at *8 (S.D. Ala. Nov. 10, 2010) (unpublished, Dkt. 45, Ex. 1). The pollution exclusion is set forth in section I.2.f.1.(d)(i) of the policy, and provides an exclusion for:

> f.(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:
> (d)    At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:
>     (i)    if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor . . . .

(Dkt. 1, Policy at I.2.f.1.(d)(i).) The complaint in the underlying lawsuit is relatively brief. Regarding the damages caused by the defective drywall, KB Home simply alleges:

> The Chinese Drywall supplied by [ABM] is defective because it is emitting gases that are negatively interacting with other elements where installed, causing damage to the Subject Homes and other property, including, but not limited to, HVAC coils, certain electrical and plumbing components, and other affected materials.

(Dkt. 42, Ex. 1, p. 2-3.)

Auto-Owners maintains that the "gases" that KB Home alleges were emitted from the defective drywall constitute "pollutants" within the meaning of the pollution exclusion contained in the policy. It further maintains that the pollution exclusion is virtually identical to pollution exclusion provisions that Florida courts have found to be unambiguous and enforceable. Thus, Auto-Owners argues that coverage is excluded under the policy.

The Court must reject this argument, however, because Auto-Owners has not shown that the allegations contained in the underlying lawsuit unambiguously fall within the pollution exclusion. For the exclusion to apply, the alleged "pollutants" at issue in the underlying lawsuit must be "[a]t or from any site or location on which you or any contractors or subcontractors working directly or indirectly on any insured's behalf *are performing operations*. . . ." (Dkt. 1, Policy at I.2.f.1.(d)(i), emphasis added.) The phrase "are performing operations" has been found to "bar coverage for the work being done by a contractor when claims arise *at the time the work is being performed.*" *Advantage Homebuilding, LLC v. Maryland Cas. Co.*, 470 F.3d 1003, 1010-11 (10th Cir. 2006) (emphasis added); *see also Oak Ford Owners Assoc. v. Auto-Owners Ins. Co.*, 510 F. Supp. 2d 812, 818 (M.D. Fla. 2007) (interpreting "are performing operations" phrase to apply to property damage arising during the performance of operations). KB Home contends, and Auto-Owners does not dispute, that the "operations" of ABM, as a material supplier, were complete at the time the materials were delivered. Thus, property damage arising from completed installation of drywall did not arise while ABM "[was] performing operations," and therefore, is not excluded under this provision.

The Court is persuaded by the reasoning advanced in *Scottsdale Insurance Company v.*

*American Safety Indemnity Co.*, No. 1:10-cv-0445-WS-N, at *10-12 (S.D. Ala. Nov. 10, 2010) (unpublished, Dkt. 45, Ex. 1), a case in which the court recently analyzed this identical pollution exclusion in the context of a Chinese drywall case. The court characterized the phrase "are performing operations" as "unequivocally present tense." Noting that Chinese drywall damages relate to alleged discharges from Chinese drywall that occur after operations are completed, the court declined to apply the identical pollution exclusion at issue here. The court's reasoning is applicable here: "the plain language of the Pollution Exclusion limits its reach to pollutant releases at locations where the insured contemporaneously performs operations, rather than pollutant releases at locations where the insured performed operations . . . earlier."

Here, there appears to be no dispute that "property damages" allegedly caused by "pollutants" occurred *after* ABM supplied the drywall to KB Home, and thus, *after* it completed its operations. Auto-Owners has not argued, nor presented any evidence, that ABM's operations included the installation of drywall and therefore its operations were ongoing at the time "pollutants" allegedly caused "property damage." In fact, the underlying lawsuit alleges that KB Home first received notice of problems from the ABM-supplied drywall after construction was completed. (Dkt. 42, Ex. 1, p. 2-3.) Accordingly, Auto-Owners has not met its "burden of demonstrating that the allegations of the [underlying] complaint are cast solely and entirely within the policy exclusion and are subject to no other reasonable interpretation." *Castillo*, 971 So. 2d at 824.

The Court also rejects Auto-Owners' argument that the pollution exclusion bars coverage for any clean up and removal efforts. Auto-Owners maintains that the pollution exclusion specifically bars coverage for any loss, cost, or expense arising out of any "request, demand or

order that . . . others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of pollutants." (Dkt. 1, Policy at I.2.f.(2).)  The underlying lawsuit, however, does not contain a demand that ABM or any other person "test for, monitor, clean up, remove, contain, treat, detoxify or neutralize" any pollutants.  Rather, in the underlying lawsuit, KB Home seeks to recover from ABM damages incurred because the "Chinese Drywall supplied by" ABM is "causing damage to the Subject Homes and other property, including, but not limited to, HVAC coils, certain electrical and plumbing components, and other affected materials." (Dkt. 42, Ex. 1 at 2-3.)  Thus, Auto-Owners has not met its burden of showing that the underlying lawsuit unambiguously seeks damages within the pollution exclusion at section I.2.f.(2).

      B.     **Exclusion 2.n.: The "Sistership" Exclusion**

Auto-Owners next argues that exclusion 2.n. precludes coverage for costs associated with recalling Chinese drywall from the market.  Exclusion 2.n. excludes coverage for "any loss, cost or expense incurred . . . for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of" an insured's product, work, or impaired property, if such product, work, or impaired property is "withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it." (Dkt. 1, Policy at I.2.n.)  Auto-Owners asserts that this exclusion applies because Chinese drywall is a product that organizations have ceased to purchase, supply, or install due to its known defects.

Auto-Owners's reliance on exclusion 2.n. is misplaced.  Exclusion 2.n. is known as the "sistership exclusion."  It derives its name from a governmental recall of an entire class of

airplanes as a precautionary measure, even though only one of the specific airplane models–a "sister" to others in the class–actually exhibited confirmed defects. *See Harris Speciality Chems., Inc. v. U.S. Fire Ins. Co.*, No. 3:98-cv-351-J-20B, 2000 U.S. Dist. LEXIS 22596, at *24, n.8 (M.D. Fla. July 7, 2000). The purpose of the exclusion is "to limit the insurer's exposure in cases where, because of the actual failure of the insured's product, similar products are withdrawn from use *to prevent the failure of these other products, which have not yet failed*, but are suspected of containing the same defect." *Honeycomb Sys., Inc. v. Admiral Ins. Co.*, 567 F. Supp. 1400, 1406 (D. Me. 1983) (emphasis added).

Auto-Owners has not met its burden of demonstrating that this exclusion applies. There is no allegation or evidence that Chinese drywall has been recalled from the market. *See Harris Specialty Chems., Inc.*, No. 3:98-cv-351-J-20B, 2000 U.S. Dist. LEXIS 22596, at *24, n.8 (concluding that the "sistership" exclusion did not apply because there were no allegations that the product was recalled, which prompted repairs on products that had not yet exhibited damage). The exclusion simply does not apply to this case.

        **C.**      **Exclusion 2.k.: The "Your Products" Exclusion**

Finally, Auto-Owners contends that exclusion 2.k. bars coverage for KB Home's claims against ABM. Exclusion 2.k. excludes from coverage "'[p]roperty damage' to 'your product' arising out of it or any part of it." (Dkt. 1, Policy at I.2.k.) Auto-Owners contends that the defective drywall constitutes ABM's "product" under the policy, and therefore, KB Home's claims for remedying, replacing, and removing the defective drywall are excluded under this provision of the policy.

The Court must reject this argument, as well. The policy defines "your product" as

"[a]ny goods or products, *other than real property* . . . sold . . . by . . . you." (Dkt. 1, Policy at V.14.a., emphasis added.) It is undisputed that the "property damage" in this case did not occur until after the ABM-supplied drywall was installed in the affected homes. Under Florida law, improvements to real property are included in the definition of real property. *See* Fla. Stat. § 192.001(12) (2010) ("'Real property' . . . means land, buildings, fixtures, and all other improvements to land."); § 558.002(8) (2010) ("'Real property" means land that is improved and the improvements on such land, including fixtures . . . ."); § 420.503(34) (2010) ("'Real property' means all lands, including improvements and fixtures thereon . . . ."). Therefore, because the ABM drywall became "real property" once it was installed, it is not within the definition of "your product" under the policy. Thus, exclusion 2.k. does not apply.[3]

## IV. Conclusion

For the reasons stated, the Court concludes that the Commercial General Liability Policy at issue here provides coverage for the "property damages" asserted against ABM in the underlying lawsuit, and that none of the policy exclusions asserted by Auto-Owners preclude that coverage. Therefore, Auto-Owners owes a duty under the policy to defend ABM in the underlying lawsuit, and owes a duty to indemnify ABM for damages for "property damage" awarded to KB Home and against ABM in the underlying lawsuit.

---

[3]Auto-Owners repeatedly argues that the policy does not cover KB Home's claims for the removal and replacement of the defective drywall, citing to paragraph 29(b) of KB Home's complaint in the underlying lawsuit. The Court, however, has reviewed that complaint, and nowhere in the complaint does KB Home state that it is seeking removal and replacement costs. Rather, KB Home seeks to recover for damages "to the Subject Homes and other property, including, but not limited to, HVAC coils, certain electrical and plumbing components, and other affected materials." (Dkt. 42, Ex. 1 at 2-3.) Exclusion 2.k. applies to "your product," but it does not apply to "real property." Thus, the exclusion is inapplicable to this case, and does not bar KB Home's claims for property damage in the underlying lawsuit.

Accordingly, KB Home's Motion for Summary Judgment (Dkt. 35) is **GRANTED**, and Auto-Owners's Motion for Summary Judgment (Dkt. 43) is **DENIED**. The Clerk is directed to enter judgment in favor of American Building Materials, Inc., KB Home Tampa, LLC, and KB Home, Inc., and against Auto-Owners Insurance Company, and to close this case. The pretrial conference scheduled in this case for July 12, 2011 is hereby **CANCELLED**, and this case is removed from the Court's August 2011 trial calendar.

**DONE AND ORDERED** at Tampa, Florida, this 17th day of May, 2011.

*[signature]*
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record