**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

AUTO-OWNERS INSURANCE
COMPANY, a foreign corporation,

     Plaintiff,

vs.

                            CASE NO.:  8:10-cv-313-T24-AEP

AMERICAN BUILDING MATERIALS,
INC., a Florida corporation, KB HOME
TAMPA, LLC, a foreign corporation, and
KB HOME, INC., a foreign corporation,

     Defendants.

**DISPOSITIVE
MOTION
OF
AUTO-OWNERS INSURANCE COMPANY
TO DISMISS FOR LACK OF JURISDICTION
AND
ALTERNATIVE MOTION TO ALTER OR AMEND**

     Auto-Owners Insurance Company, the named plaintiff in the above styled case,

moves this Court for an order

    (1)     vacating the judgment dated May 18, 2011,

    (2)     vacating the order dated May 17, 2011, and

    (3)     dismissing this action for lack of subject matter jurisdiction.

     In the alternative, and in the event the motion to dismiss for lack of jurisdiction is

denied, Auto-Owners Insurance Company moves this Court for an order

    (1)     vacating the judgment dated May 18, 2011, and

    (2)     amending the order dated May 17, 2011, to declare that Auto-Owners
           Insurance Company has no duty to defend or indemnify American

Building Materials, Inc. against the claims of KB Home Tampa, LLC in *KB Home Tampa, LLC v. American Building Materials, Inc.*, Case No. 1-CA-1432 in the 13th Judicial Circuit in and for Hillsborough County, Florida ("the Underlying Complaint").

## MEMORANDUM OF LEGAL AUTHORITIES

### Introduction

This action was commenced to obtain a declaration that there was no duty to defend or indemnify American Building Materials, Inc. ("ABM") against the Underlying Complaint under policy number 052312-20669817-06.

Counsel mistakenly commenced this action in the name of "Auto-Owners Insurance Company". The policy was actually issued by "Owners Insurance Company", a separate and distinct legal entity from Auto-Owners Insurance Company.

Therefore, Auto-Owners insurance Company did not have any interest, direct or indirect, in the outcome of this action at the time it was commenced and, except for the entry of a judgment against it for a policy it did not issue, it currently has no interest in the outcome.

Lack of subject matter jurisdiction may be raised at any stage in the proceedings by any party or by the court on its own motion. *Majd-Pour v. Georgiana Community Hosp., Inc.*, 724 F.2d 901, 902 (11th Cir. 1984)

Even if the jurisdictional issues could be solved and the correct insurer substituted for the actual named plaintiff, the Order of May 17, 2011, contains errors of fact and law that should be corrected by amendment of the Order. The decision to alter or amend judgment is committed to the sound discretion of the district judge. *American Home*

*Assur. Co. v. Glenn Estess & Associates, Inc.*, 763 F.2d 1237, 1238 -1239 (11th Cir.

1985). Amendment of the Order will correct clear error and prevent manifest injustice.

*See Colony Ins. Co. v. Suncoast Medical Clinic, LLC*, 726 F.Supp.2d 1369, 1380 (M.D.

la. 2010) (the need to correct clear error and prevent manifest injustice is a proper

purpose of a motion to reconsider).

### The Proceedings in the Middle District of Florida

### The Complaint for a Declaratory Judgment

The plaintiff in the original complaint for a declaratory judgment filed January 28,

2010, is "Auto-Owners Insurance Company". The same plaintiff is named in the

amended complaint which seeks a declaration solely as to coverage for "American

Building Materials, Inc." No judgment was sought against "KB Home Tampa, LLC" or

"KB Home, Inc." in the amended complaint.

### The Counterclaims

On July 1, 2010, KB Home Tampa, LLC and KB Home, Inc. filed a counterclaim

against Auto-Owners Insurance Company seeking a declaration that they were entitled to

defense and indemnity for three class actions pending in Multi District Litigation in New

Orleans, Louisiana as well as any other claims for drywall supplied by American

Building Materials, Inc. No specific claims of any individuals are named.

### Claims against KB Home Tampa, LLC and KB Home, Inc.

No complaints have been provided from which the nature of the claims against

KB Home Tampa, LLC and KB Home, Inc. can be determined.

### *Claims of KB Home Tampa, LLC and KB Home, Inc. against American Building Materials, Inc.*

The Underlying Complaint against ABM alleges that ABM provided building drywall and installed it under contract, It seeks indemnification for claims by homeowners against KB Home Tampa, LLC.

Evidently there is no contract between KB Home, Inc. and American Building Materials, Inc., and there has been no claim by KB Home, Inc. against American Building Materials, Inc.

### *Motions for Summary Judgment*

Auto-Owners Insurance Company filed motions for summary judgment on April 15, 2011, (Dkt. 39) and April 18, 2011 (Dkt. 40). These motions asked for a declaration that Auto-Owners had no duty to defend or indemnify ABM, KB Home Tampa, LLC, or KB Home, Inc.

On April 15, 2011, (Dkt. 35) KB Home Tampa, LLC and KB Home, Inc. filed a motion for summary judgment asking for an order declaring that Auto-Owners Insurance Company "has both a duty to defend and a duty to indemnify" ABM in the Underlying Complaint (attached as pages 7-14 Dkt. 42). In a footnote to its motion for summary judgment KB Home Tampa, LLC and KB Home, Inc. state that their motion "addresses exclusively ABM's coverage under the policy as the primary named insured."

There is a "Master Subcontract" dated March 3, 2006, between KB Home Tampa, LLC and ABM attached as exhibit the motion for summary judgment (Dkt. 42). That contract does not call for the performance of any work. The specific "Work Agreement"

describing the work to be performed by ABM is not attached. The affidavit of Tom

Schramski, also attached to Dkt. 42, states that ABM did not install the drywall

Paragraph 15 of the March 3, 2006, contract includes a broad form of

indemnification against claims that "arise out of or relate to" the contract as well as

"work performed or materials supplied by or on behalf of" ABM.

On April 15, 2011, (Dkt. 37) ABM joined in the motion filed by KB Home

Tampa, LLC and KB Home, Inc.

### *The Opinion and Order*

On May 18, 2011, the clerk entered the following judgment:

> Judgment is entered in favor of American Building Materials, Inc., KB Home Tampa, LLC, and KB Home, Inc., and against Auto-Owners Insurance Company.

That judgment was, in turn, based on an Order dated May 17, 2011, (the Order")

and entered on the same date. The Order stated:

> Accordingly, KB Home's Motion for Summary Judgment (Dkt. 35) is **GRANTED**, and Auto-Owner's Motion for Summary Judgment (Dkt. 43) is **DENIED**. The Clerk is directed to enter judgment in favor of American Building Materials, Inc., KB Home Tampa, LLC, and KB Home, Inc., and against Auto-Owners Insurance Company, and to close this case.

By granting the motion of KB Home Tampa, LLC and KB Home, Inc. the Order

ruled, in effect, that Auto-Owners Insurance Company "has both a duty to defend and a

duty to indemnify" ABM against the Underlying Complaint.

The Order (Dkt. 47) concluded that:

(a) exclusion I.A.2.f, the pollution exclusion, did not apply because the escape of pollutants did not occur at premises on which any insureds "are performing operations" (p. 7-8);

(b) exclusion I.A.2.n, the "sistership" exclusion, did not apply because "there is no allegation or evidence that Chinese drywall has been recalled from the market" (p. 10);

(c) exclusion I.A.2.k, the "your products" exclusion, did not apply because the drywall became "real property" when it was installed (p. 11); and

(d) there is no "dispute that there was in fact an 'occurrence' of 'property damage' within the 'coverage territory' and during the policy period as those terms are defined within the policy." (p.6)

**I. The Judgment and Order should be vacated and the action dismissed because the Court lacks jurisdiction of the subject matter as the action was brought in the name of a plaintiff without standing.**

Policy number 052312-20669817-06 was issued by "Owners Insurance Company", but the named plaintiff in the declaratory judgment action is "Auto-Owners Insurance Company". "Owners Insurance Company" and "Auto-Owners Insurance Company" are each separate active corporations qualified to do business in Florida.

Auto-Owners Insurance Company had no standing to bring a declaratory judgment action for interpretation of a policy issued by Owners Insurance Company.

As a result of the erroneous use of Auto-Owners Insurance Company as the plaintiff in the declaratory judgment action, the a judgment has been entered against

6

Auto-Owners Insurance Company for liability under a policy actually issued by Owners

Insurance Company.

Therefore the Order and Judgment should be vacated and the case dismissed in its

entirety for lack of subject matter jurisdiction.

A defect in standing creates a defect in subject matter jurisdiction, necessitating

dismissal under F. R. Civ. Proc. 12(b)(1). *See Haase v. Sessions,* 266 U.S.App.D.C. 325,

329, 835 F.2d 902, 906 (1987) (citing *Bender v. Williamsport Area School Dist.,* 475 U.S.

534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986)).

In *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 546 n.8 (1986), the

court stated:

> "The rules of standing, whether as aspects of the Art. III case-or-
> controversy requirement or as reflections of prudential considerations
> defining and limiting the role of the courts, are threshold determinants of
> the propriety of judicial intervention.

*See Automated Information Processing, Inc. v. Genesys Solutions Group, Inc.*, 164

F.R.D. 1, 3-4 (E.D.N.Y. 1995) (observing that Rule 25 F. R. Civ. Proc. contemplates that

there actually be an original party and that the original party have an interest to transfer).

In *Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 530 (6th Cir. 2002), the court held that

an insurer without any interest in the claim, named through mistake of attorney, lacked

standing to bring the action or to move to substitute the real party in interest.

**II.     Neither KB Home Tampa, LLC nor KB Home, Inc. nor American
Building Materials, Inc. met their burden of establishing coverage under policy
number 052312-20669817-06**

The insured has the burden of establishing the coverage and the insurer has the

burden of establishing the application of any exclusion. As the court explained in *East*

*Florida Hauling, Inc. v. Lexington Ins. Co.*, 913 So.2d 673, 678 (Fla. App. 3d Dist. 2005):

> The burden is on the insured to prove that the insurance policy covers a claim against it. *Hudson Ins. Co. v. Double D Mgmt. Co., Inc.,* 768 F.Supp. 1542 (M.D.Fla.1991). Once the insured shows coverage, the burden shifts to the insurer to prove an exclusion applies to the coverage. *LaFarge Corp. v. Travelers Indem. Co.,* 118 F.3d 1511, 1516 (11th Cir.1997). If there is an exception to the exclusion, the burden once again is placed on the insured to demonstrate the exception to the exclusion. *Id.*

*See also*, *Castillo v. State Farm Florida Ins. Co.*, 971 So.2d 820, 824 (Fla. App. 3d Dist. 2007).

The duty to defend "depends solely on the allegations in the complaint filed against the insured." *Tropical Park, Inc. v. United States Fidelity and Guaranty Co.,* 357 So.2d 253, 256 (Fla. 3d DCA 1978); *Coblentz v. American Surety Co.,* 416 F.2d 1059, 1062 (5th Cir.1969). The complaint must allege facts which fairly bring the case within coverage even though ultimately there may be no liability on the part of the insured. *Tropical Park,* 357 So.2d at 256. If the complaint alleges facts partially within and partially outside the scope of coverage, the insurer is obligated to defend the entire suit. *Id.; Battisti v. Continental Cas. Co.,* 406 F.2d 1318, 1321 (5th Cir.1969).

In order to establish coverage under policy number 052312-20669817-06, an insured must prove that there was in fact an occurrence of property damage or bodily injury within the coverage territory and during the policy period as those terms are defined within the policy.

**A. The defendants did not establish the existence of an "occurrence"**

Insurance under Coverage A applies only to bodily injury or property damage that is caused by an "occurrence". Form CG0001(11-88) § I.A.1.b(1)&(2).

An "occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Form CG0001(11-88), § V.9. The term "accident" is not defined in the policy.

In *United States Fire Insurance Co. v. J.S.U.B., Inc.,* 979 So.2d 871 (Fla.2007),the court held that "faulty workmanship that is neither intended nor expected from the standpoint of the contractor can constitute an 'accident' and, thus, an 'occurrence' under a post-1986 CGL policy." *Id.* at 888. By relying on the fact that the faulty work was performed by a subcontractor, *United States Fire Insurance Co. v. J.S.U.B., Inc.* does not necessarily establish that the insured's own faulty installation is an occurrence. Therefore, the defendants have not established that there has been an occurrence in the suit against ABM. by KB Home Tampa, LLC.

**B. The defendants did not establish the existence of property damage**

"Property damage" is defined in form CG0001(11-88), § V.12 as follows:

> "Property damage" means:
> (a) Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> (b) Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

In *Auto-Owners Ins. Co. v. Pozzi Window Co.*, 984 So.2d 1241, 1248-1249 (Fla. 2008), the court stated:

Similar to the CGL policies at issue in *J.S.U.B.,* the CGL policies issued by Auto-Owners to the Builder in this case provide coverage for an "occurrence" that causes "property damage." . . .

The CGL policies define "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property." In *J.S.U.B.,* we explained that other courts have also "recognized that there is a difference between a claim for the costs of repairing or removing defective work, which is not a claim for 'property damage,' and a claim for the costs of repairing damage caused by the defective work, which is a claim for 'property damage.' " *Id.* at 889. . . .  In essence, the mere inclusion of a defective component, such as a defective window or the defective installation of a window, does not constitute property damage unless that defective component results in physical injury to some other tangible property.

Accordingly, if the claim in this case is for the repair or replacement of windows that were defective both prior to installation and as installed, then that is merely a claim to replace a "defective component" in the project.

In the Underlying Complaint, the allegation is that the Chinese drywall was defective as supplied by ABM. Therefore, the defective drywall is not itself "property damage" and there is no coverage for its replacement.

If the defective drywall caused damage to other property, then the repair or replacement of the other property could be covered, but the Order did not recognize this distinction.

### C. There is no claim for bodily injury.

"Bodily injury" is defined in form CG0001(11-88), § V.3. as follows:

"Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any one time.

There is no mention in the Underlying Complaint of bodily injury.

**D. The defendants have not shown the existence of a loss within the policy period.**

According to § I.A.1.b.(2) of form CG0001(11-88) of policy number 052312-20669817-06, to be covered, the property damage or bodily injury must occur during the policy period.

In Florida coverage under a CGL policy is triggered when property damage manifests itself, not when the negligent act or omission giving rise to the damage occurs. *See, e.g., Assurance Co. of Am. v. Lucas Waterproofing Co., Inc.,* 581 F.Supp.2d 1201, 1206 (S.D. Fla.2008); *Essex Builders Group, Inc. v. Amerisure Ins. Co.,* 485 F.Supp.2d 1302, 1309-10 (M.D. Fla.2006); *North River Ins. Co. v. Broward County Sheriff's Office,* 428 F.Supp.2d 1284, 1289 (S.D. Fla.2006); *American Motorists Ins. Co. v. Southern Sec. Life Ins. Co.,* 80 F.Supp.2d 1280, 1284 (M.D. Ala.2000) (applying Florida law); *Trizec Properties, Inc. v. Biltmore Const. Co., Inc.,* 767 F.2d 810, 813 (11th Cir. 1985) (explaining that it is the damage itself which must occur during the policy period for coverage to be effective); *Amerisure Mut. Ins. Co. v. Albanese Popkin The Oaks Development Group, L.P.,* 2010 WL 4942972, 7 (S.D. Fla. November 30, 2010) (when the insured sustained actual damage before the policy in question became effective there was no "bodily injury" or "property damage" during the policy period)

There is no evidence when the homeowners first suffered the damage for which they have asserted claims against KB Home Tampa, LLC, and the Underlying Complaint does not assert when the damage occurred.

The only relevant assertion in the defendants' moving papers is the statement that "Property Damage to Affected Homes occurred during the Policy period." (Dkt. 35, p. 5). The only support for that assertion is the affidavit of Tom Schramski who merely states:

> Property damage to at least 50 Affected Homes would almost certainly have been detectable (had there been a reason to specifically inspect for it) between June 15, 2006, and June 15, 2007.

(Dkt. 42, P. 5, ¶ 9) This hardly meets the requirement of Rule 56, F.R. Civ. Proc. for an affidavit on personal knowledge.

There is no evidence when KB Home Tampa, LLC and KB Home, Inc. suffered the damages for which they claim indemnification from American Building Materials, Inc. Consequently, there is no means for determining whether there has been an occurrence within the policy period of policy number 052312-20669817-06.

Determination of the correct policy period is significant, among other reasons, because of the application of policy limits and the known loss provision.

**E. The defendants have not shown the insured's lack of knowledge of the claim prior to the issuance of the policy.**

The insuring clause of Coverage A of form CG0001(11-88), as amended by form 55229(01-02), states:

> b.      This insurance applies to "bodily injury" and "property damage" only if:
> . . . .
> (3)      Prior to the policy period, no insured listed in Paragraph 1. of WHO IS AN INSURED (Section II) and no employee authorized by you to give or receive notice of an "occurrence" or claim, knew or should have known that the "bodily injury" or "property damage" had occurred in whole or in part. . . .

Therefore, policies issued after notice of a loss will not cover the loss. The record states that KB Home Tampa, LLC and KB Home, Inc. gave notice of the loss to ABM but not when the notice was given or which losses were the subject of the notification. It is possible that ABM received notice of the claims before policy number 052312-20669817-06 was issued.

**III.   The Order did not correctly apply the "pollution exclusion".**

Exclusion I.A.2.f of form CG0001(11-88) states:

> This insurance does not apply to:
> . . . .
> f. (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:
> > (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;
> > . . . .
> > (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations: . . .
> . . . .
> (2) Any loss, cost or expense arising out of any:
> > (a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or asses the effects of pollutants; or
> . . . .

Following a strictly literal interpretation of exclusion I.A.2.f(1)(d) the Order found that it applied only to discharge of pollutants contemporaneously with the insured's operations.

On the other hand, the Order did not consider exclusion I.A.2.f(1)(a). That exclusion does not have a temporal limitation; it excludes coverage for pollution at any premises owned or occupied by "any insured" at "any time".

In this case, KB Home Tampa, LLC and KB Home, Inc. are insureds and the

discharge occurred at premises they owned or occupied.

The preamble to form CG0001(11-88) states:

> Throughout this policy the words "you" and "your" refer to the Named
> Insured shown in the Declarations, and any other person or organization
> qualifying as a Named Insured under this policy. The words "we", "us"
> and "our" refer to the company proving this insurance.
> The word "insured" means any person or organization qualifying as such
> under WHO IS AN INSURED (SECTION II).

Section II – Who is an Insured on pages 6-7 of form CG0001(11-88) states:

> 1. If you are designated in the Declarations as:
> . . . .
> c.      An organization other than a partnership or joint venture,
>         you are an insured.  Your executive officers and directors
>         are insureds, but only with respect to their duties as your
>         officers or directors. Your stockholders are also insureds,
>         but only with respect to their liability as stockholders.
>         …

Section II – Who is an Insured on page 7 of form CG0001(11-88) also states:

> 2.      Each of the following is also an insured:
> a.      Your employees other than your executive officers, but
>         only for acts within the scope of their employment by you.
>         However, no employees is an insured for:
>                 (1)     "Bodily injury" or "personal injury" to you or  to a
>                 co-"employee" while in the course of his or her
>                 employment. . .

Neither KB Home Tampa, LLC nor KB Home, Inc. is a Named Insured under

policy number 052312-20669817-06.

However, both KB Home Tampa, LLC and KB Home, Inc. qualify as an insured under Section II – Who Is An Insured because form 55202(05-00) of policy number 052312-20669817-06 states:

> 1.     Under Section II-WHO IS AN INSURED, the following is added: The person or organization shown in the above Schedule is an Additional Insured, but only with respect to liability arising out of "your work" for that insured by or for you.
> 2.     Under Section I, COVEREAGES, 2. Exclusions, the following exclusion is added:
> The insurance provided herein to the Additional Insured does not apply to the "products-completed operations hazard".

The schedule includes, among others, "KB Home KB Home Tampa LLC" as additional insureds. Therefore, KB Home Tampa, LLC and KB Home, Inc. are "insureds" as the term is defined in the Preamble.

One of these owned or occupied the premises before they were sold or transferred to the affected homeowners. Thus coverage should have been denied under exclusion I.A.2.f(1)(a).

The Order also discounted the application of exclusion I.A.2.f(2) because the Underlying Complaint does not contain a demand that ABM clean up any pollutants (Dkt. 47, p.9; *see also* p. 11 n.3 ("nowhere in the complaint does KB Home state that it is seeking removal and replacement costs")). To the contrary, paragraph 14 of the Underlying Complaint alleges that KB Homes has begun "repairing and remediating" the affected homes (Dkt. 42, p. 9; *see also* paragraphs 26-27, 30 at p. 10). Moreover, the affidavit of Tom Schramski describes a process of repair that can only be characterized as "clean up" and "removal" (Dkt. 42, p. 4, ¶ 5).

**IV. The Order did not correctly apply the contract exclusion.**

Policy form CG0001(11-88), as amended by form 55069(01-88), also provides

certain exclusions from Coverage A. Exclusion I.A.2. states:

> This insurance does not apply to:
> . . . . .
> b.      "Bodily injury" or "property damage" for which the insured is
> obligated to pay damages by reason of the assumption of liability in a
> contract or agreement. This exclusion does not apply to liability for
> damages:
>> (1)    Assumed in a contract or agreement that is an
>> "insured contract". However, if the insurance under
>> this policy does not apply to the liability of the
>> insured, it also does not apply to such liability
>> assumed by the insured under an "insured contract".
>> (2)    That the insured would have in the absence of the
>> contract or agreement.

The term "insured contract" is defined in section V.6 of form CG0001(11-88).

The Underlying Complaint by KB Home Tamps, LLC against ABM is solely for

indemnification based on several legal theories. While ABM may be liable to KB Home,

Tampa, LLC under these theories, its coverage for its liability to KB Home Tampa, LLC

under the policy is limited to the same extent as its own liability would be covered under

the policy. Therefore, breach of contract claims are excluded by exclusion I.A.2.b. to the

extent that the insurance does not apply to the liability of the insured.

The Order failed to recognize this distinction when it ordered the insurer to

defend and indemnify American Building Materials, Inc. for the claims in the underlying

complaint without limit.

**V. The Order did not correctly apply the "business risk" exclusions.**

Paragraph I.A.2 of form CG 0001(11-88) also contains the following additional

exclusions from Coverage A:

> This insurance does not apply to:
> . . . .
> k.     "Property damage" to "your product" arising out of it or any part of it.
> . . ,
> m.     "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
> > i.     A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
> > ii.    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
> >
> > This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.
> n.     Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
> > (1)    "Your product";
> > (2)    "Your work"; or
> > (3)    "Impaired property";
> > if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

According to the definition in form CG0001(11-88), § V.5

> "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:
> > a. It incorporates "your product" or "your work" that is known or thought to defective, deficient, inadequate or dangerous; or
> > b. You have failed to fulfill the terms of a contract or agreement;
> if such property can be restored to use by:
> > a. The repair, replacement, adjustment or removal of "your Product" or "your work"; or
> > b. Your fulfilling the terms of the contract or agreement.

According to the definition in form CG0001(11-88), § V.14

"Your product" means:
    a.    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
        (1)    You;
        (2)    Others trading under your name; or
        (3)    A person or organization whose business or assets you have acquired; and
    b.    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product includes
    a.    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and
    b.    The providing of or failure to provide warnings or instructions.

"Your product does not include vending machines or other property rented to or located for the use of others but not sold.

Exclusions I.A.2.k, m, and n of form CG0001(11-88) are part of a group of exclusions often referred to as the "business risk" exclusions. *See Liberty Mut. Ins. Co. v. Wheelwright Trucking Co., Inc.*, 851 So.2d 466, 495 (Ala. 2002). Commercial general liability policies are designed to protect an insured against certain losses arising out of business operations. By operation of the CGL's business risk exclusions, CGL policies generally do not cover contract claims arising out of the insured's defective work or product. *See United States Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So.2d 871, 885 (Fla. 2007). These exclusions bar coverage for the cost of repair and replacement of the insured's faulty or defective workmanship or for other problems associated with the insured's business risk.

In *United States Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So.2d 871, 885 (Fla. 2007),

the court stated:

> We agree with the Wisconsin Supreme Court's observation that CGL policies generally do not cover contract claims arising out of the insured's defective work or product, but this is by operation of the CGL's business risk exclusions, not because a loss actionable only in contract can never be the result of an "occurrence" within the meaning of the CGL's initial grant of coverage. This distinction is sometimes overlooked, and has resulted in some regrettably overbroad generalizations about CGL policies in our case law.

In *West Orange Lumber Co., Inc. v. Indiana Lumbermens Mut. Ins. Co.*, 898

So.2d 1147, 1148 (Fla. App. 5th Dist. 2005), the court stated:

> The trial court concluded that with regard to the Commercial General Liability Policy, there were no allegations of property damages and that the dispute concerned a breach of contract, not a tort. Failure to supply a product specified in a contract is a business risk not covered by the liability policy issued by Indiana.
> We agree. The purpose of comprehensive liability insurance coverage is to provide protection for personal injury or for property damage caused by the completed product, but not for the replacement and repair of that product or to insure construction or contract deficiencies.

In *Sekura v. Granada Ins. Co.*, 896 So.2d 861, 862 (Fla. App. 3d Dist. 2005), the

court stated:

> The Sekuras' claim for the cost of replacement and repair of deficient construction (that is, construction which did not meet FEMA and Monroe County elevation requirements and thus, did not meet requirements of the parties' contract) was expressly precluded by the work product, business risk and professional services exclusions contained in Granada's policy. It is well established that as a matter of public policy, commercial liability insurance policies, like Granada's, do not cover claims for defective or deficient workmanship.

Therefore, even if there is coverage for damage caused to other property by the

insured's defective product, there is no coverage for repair or replacement of the

insured's product, itself. *See Auto Owners Ins. Co. v. Travelers Cas. & Surety Co.,* 227 F.Supp.2d 1248, 1263-64 (M.D. Fla. 2002) (CGL policies provide coverage for property damage caused by the product, but not for replacement and repair of the product, applying Florida law).

Although the underlying complaint alleges that ABM installed the drywall, the affidavit of Tom Schramski establishes that it did not. Therefore the "your work" exclusions do not apply because ABM did not perform any work on the homes constructed by KB Home Tampa, LLC.

The Order found that exclusion I.A.2.n, the "sistership" exclusion did not apply (Dkt. 47, p.9). However, in *West Orange Lumber Co., Inc. v. Indiana Lumbermens Mut. Ins. Co.*, 898 So.2d 1147, 1148 (Fla. App. 5th Dist. 2005), the court found that exclusion I.A.2.n did apply to exclude coverage for a defective product, rejecting the notion that its application required some governmental action.

Moreover, exclusions I.A.2.k and exclusion I.A.2.m do apply to an insured who merely supplied materials.

The Order circumvented the business risk exclusions by finding that the drywall supplied by ABM became real property once it was installed and therefore no longer constituted "your product" under the definition quoted above.

Courts have routinely relied on the "real property" exception to the "your product" exclusion where the product is clearly real property. *See*, *e.g.*, *Mid-Continent Cas. Co. v. Titan Const. Corp.*, 281 Fed. Appx. 766, 768-769, 2008 WL 2340493, 2 (9th Cir. June 9, 2008) (building); *Prisco Serena Sturm Architects, Ltd. v. Liberty Mut. Ins.*

*Co.*, 126 F.3d 886, 892 (7th Cir. 1997) (building); Friel Luxury *Home Const., Inc. v.*

*ProBuilders Specialty Ins. Co.*, 2009 WL 5227893, 6 (D. Mass., December 22, 2009)

(residential home); *Houseman Const. Co. v. Cincinnati Cas. Co.*, 2009 WL 2095994, 3-4

(W.D. Mich. July 4, 2009) (grocery store); *Fireman's Fund Ins. v. Gerling American Ins.*,

2008 WL 3399041, 7 (N.D. Cal. April 11, 2008) (asphalt plant); *Scottsdale Ins. Co. v.*

*Tri-State Ins. Co.*, 302 F.Supp.2d 1100, 1104-1107 (D. N.D. 2004) (prefabricated

modular motel units).

There is less agreement when the product is a component that has been assembled

into buildings that become a fixture of real property. In *Indian Harbor Ins. Co. v.*

*Transform LLC*, 2010 WL 3584412, 6 (W.D. Wash. September 8, 2010), the court stated:

> Contrary to AHM's contention, the "real property" exclusion of "your
> product" is not applicable here. As components of a larger structure,
> Transform's modules and the materials used to construct them do not
> constitute "real property."

In *Building Specialties, Inc. v. Liberty Mut. Fire Ins. Co.* 712 F.Supp.2d 628, 646-647

(S.D. Tex. 2010), the court held that insulation ducts included in buildings were

components and not real property:

> To the extent Building Specialties claims a duty to defend or indemnify
> arising out of "property damage" to the faulty product-the cost of
> remedying the defective insulation-that claim is precluded by the "your
> product" exclusion as a matter of law.

*See also Employers Mut. Cas. Co. v. Grayson*, 2008 WL 2278593, 6 (W.D. Okla. May

30, 2008) (acknowledging that non-conforming concrete did not become real property

when used to construct building); *Walla Walla College v. Ohio Cas. Ins. Co.*, 204 P.3d

961, 964 (Wash. App. Div. 3 2009) (exclusion applies to underground gasoline storage tank).

By contrast, the court in *Southwest Metalsmiths, Inc. v. Lumbermens Mut. Cas. Co.*, 85 Fed. Appx. 552, 555, 2003 WL 23156677, 2 (9th Cir. January 8, 2004), *withdrawn pursuant to settlement*, 92 Fed. Appx. 567 (9th Cir. April 1, 2004), found that covers installed on columns fit within the real property exception:

> Likewise, the "real property" exception to the "your product" exclusion applies to the column covers, because the "occurrence" of paint delamination did not occur until after the covers were affixed to the columns. Under the Arizona common law definition of "real property," the covers became part of the real estate at Stonybrook once they were affixed to the columns. *See Fish v. Valley Nat'l Bank of Phoenix,* 64 Ariz. 164, 167 P.2d 107, 111 (1946). When repairs were made to the covers, they remained affixed to the columns and were not removed to facilitate repairs, reinforcing the real property determination.

The Supreme Court of Florida did not apply the real property exception when it analyzed the installation of windows in *Auto-Owners Ins. Co. v. Pozzi Window Co.*, 984 So.2d 1241, 1248-1249 (Fla. 2008).

Moreover, the definition itself compels the conclusion that the status of the product should be determined at the time it is "manufactured, sold, handled, distributed or disposed of by" the insured, and not after it has been installed.

**VI. There is no coverage for attorney fees.**

The Underlying Complaint by KB Home Tampa, LLC against ABM includes a demand for attorney fees.

Coverages A is limited to the insured's liability for damages. Section I.A.1.a of form CG0001(11-88) states:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

In addition, Supplementary Payments – Coverages A and B, section 1.e, of form CG0001(11-88) states:

> We will pay, with respect to any claim or "suit" we defend:
> . . . .
> 5. All costs taxed against the insured in the "suit".

The authorities are not consistent on the question whether the award of the plaintiff's attorney fees incurred prosecuting the claim against the insured constitutes "damages" insured against in the CGL policy.

The issue has arisen most often in connection with federal civil rights suits in which the plaintiffs requested attorney fees pursuant to the Civil Rights Attorney's Fees Awards Act of 1976 (42 U.S.C. § 1988), which permits the court in its discretion to award the prevailing party "a reasonable attorney's fee as part of the costs." As costs, they are distinguished from damages. *See Ellett Bros. v. United States Fidelity & Guaranty Co.*, 275 F. 3d 384, 388 (4th Cir. 2001); *Sullivan County, Tenn. v. Home Indem. Co.*, 925 F.2d 152, 153 (6th Cir.1991); *Cutler-Orosi Unified School District v. Tulare County School Etc. Authority* 31 Cal.App.4th 617, 37 Cal.Rptr.2d 106 (1994).

In *Assurance Co. of Am. v. Lucas Waterproofing Co., Inc.*, 581 F. Supp. 2d 1201, 1214-15 (S.D. Fla. 2008), the court held that

> [A]ttorneys' fees and costs that an insured becomes obligated to pay because of a contractual or statutory provision, which are attributable to an insurer's duty to defend the insured against claims that would be covered by the policy if the claimant prevails, constitute damages because of 'property damage' within the meaning of a CGL policy

The court distinguished such attorney fees from a contractual term providing for attorney fees in a breach of contract action. Therefore, whether attorney's fees are also treated as covered costs or damages turns on how attorney fees are characterized under the contract or statute which allowed for their recovery.

Even allowing for the implications of *Lucas Waterproofing*, all of the claims asserted by KB Home Tampa, LLC for attorney fees are based on the breach of contract claim and are not covered by the CGL policy.

### VII.    The determination of a duty to indemnify is premature

The duty to defend is separate and apart from the duty to indemnify, and the insurer may be required to defend a suit even if the later true facts show there is no coverage. *Klaesen Bros., Inc. v. Harbor Ins. Co.,* 410 So.2d 611, 612-13 (Fla. 4th DCA 1982); *Burton v. State Farm Mutual Auto. Ins. Co.,* 335 F.2d 317, 321 (5th Cir.1964); *Trizec Properties, Inc. v. Biltmore Const. Co., Inc.*, 767 F.2d 810, 812 (11th Cir. 1985); *MJCM, Inc. v. Hartford Cas. Ins. Co.*, 2010 WL 1949585, 4-5 (M.D. Fla. 2010); *Underwriters at Lloyds London v. STD Enterprises, Inc.*, 395 F.Supp.2d 1142, 1147 (M.D. Fla. 2005).

If a court should find that the insurer has a duty to defend, the insurer's duty to indemnify is not ripe for adjudication in a declaratory judgment action until the insured is in fact held liable in the underlying suit and the basis for liability is established. *See International Environmental Corp. v. National Union Fire Ins. Co. of Pittsburgh, Pa.,* 843 F. Supp. 1218, 1231 (N.D. Ill 1993) (while underlying litigation is still pending a ruling on excess insurer's duty to indemnify would be premature); *New Castle County v.*

*Continental Cas. Co.,* 725 F. Supp. 800, 818 (D. Del. 1989) (determination of liability under excess policy is premature with respect to the duty to indemnify while underlying actions are still pending) *Employers Mut. Cas. Co. v. Evans,* 76 F.Supp.2d 1257, 1260 (N.D. Ala. 1999); *Guaranty Nat'l Ins. Co. v. Beeline Stores, Inc.,* 945 F.Supp. 1510, 1514-15 (M.D. Ala. 1996); *Nationwide Ins. v. Zavalis,* 52 F.3d 689, 693 (7th Cir. 1995); *Assurance Co. of America v. Legendary Home Builders, Inc.,* 305 F. Supp. 2d 1266, 1270 (S.D. Ala. 2003); *W.G. Yates & Sons Const. Co. v. Zurich American Ins. Co.*, 2008 WL 161921, 6 (S.D. Ala. January 8, 2008) (citing cases).

/s/ Michael S. Rywant
Michael S. Rywant, Esquire, Trial Counsel
FBN: 240354
mrywant@rywantalvarez.com
RYWANT, ALVAREZ, JONES, RUSSO
& GUYTON, P.A.
109 North Brush Street
Tampa, Florida 33602
Tel:  (813) 229-7007
Fax:  (813) 223-6544
Attorney for Auto-Owners Insurance
Company

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01(d)

I HEREBY CERTIFY that I have conferred with counsel for the opposing parties via telephone in a good faith effort to resolve the issues raised by the foregoing motion and counsel do not agree on the resolution of the motion.

/s/ Michael S. Rywant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 2, 2011, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:  Ron A. Mattson, Esquire, Law Office of Thamire A.R. Kaddouri, Jr., P.A., rmattson@tampalaw.org (Attorney for American Building Materials, Inc.), Thamir A.R. Kaddouri, Jr., Esquire, Law Office of Thamire A.R. Kaddouri, Jr., P.A., thamir.kaddouri@tampalaw.org (Attorney for American Building Materials, Inc.) and Charles A. Carlson, Esquire, Barnett, Bolt, Kirkwood, Long & McBride, ccarlson@barnettbolt.com (Attorney for KB Home).

/s/ Michael S. Rywant
Michael S. Rywant, Esquire, Trial Counsel
FBN: 240354
mrywant@rywantalvarez.com
RYWANT, ALVAREZ, JONES, RUSSO
& GUYTON, P.A.
109 North Brush Street
Tampa, Florida 33602
Tel:    (813) 229-7007
Fax:    (813) 223-6544
Attorney for Auto-Owners Insurance
Company